# Exhibit A

# Notification



We are pleased to announce that effective July 27, 2009, our new brand name is Chartis.

The launch of the Chartis brand is an important milestone in our progress towards gaining operating independence and a strong future for our company. While our name is new, we remain a leading global property-casualty and general insurance operation, with the financial strength, innovation and expertise you have grown to expect.

As we rollout the Chartis brand over the next several months, we will also be changing the names of many of our insurance companies. We will move swiftly to change the names but the timeline will be driven by our compliance with legal and regulatory requirements. The name changes do not impact your coverage in any way.

For up to date information on our brand transition, please visit us at http://chartisinsurance.com



---

## Executive Liability Value Proposition

### *Why Choose Chartis for your Executive Liability Coverage needs?*

**UNDERWRITING EXPERTISE & MARKET DEDICATION**
- Named the #1 provider of Directors & Officers insurance [1]
- More than 40 years of experience and commitment to the market, offering stable, high-limit capacity with a diverse appetite for risk
- Broad and innovative product offering, including unrivaled international capabilities via our Passport platform
- Ongoing pursuit of outstanding client service through continuous dialogue and client feedback response
- Over 350 dedicated underwriting professionals with an average of 10 years of industry experience
- A dedicated legal staff skilled in developing manuscript solutions tailored to client coverage needs
- Regional offices provide local underwriting presence and authority, delivering expertise and solutions across all lines of business
- Specialized underwriting and claims units focused on key segments, including Errors and Omissions, Financial Institutions, Fidelity and Private and Non-Profit
- Large geographic footprint that benefits companies doing business in multiple international jurisdictions
- Nearly 20,000 unique policyholders [2]

**SUPERIOR CLAIMS MANAGEMENT**
- We have a claims staff of 300 who manage 27,000 new claims per year, averaging 2,250 new claims per month
- Our claims management team has an average of 15 years of industry experience for management
- Total payments made by Executive Liability on behalf of its insureds in 2008 totaled more than $1.9 billion
- Resolved claims exceeding $9 million in value have increased over 850 percent since 1996 [3]
- The top 25 claims paid by Executive Liability in 2008 totaled nearly $300 million

**CHARTIS FINANCIAL SNAP-SHOT**
- Chartis Worldwide Statutory Surplus is $32.1 billion [4]
- In 2008, Chartis companies wrote $52.1 billion in gross written premiums worldwide
- Chartis has ample resources to pay policyholder claims, paying $71 million in claims worldwide every business day in 2008
- Objective sources confirm our company's strong financial standing.  From rating agencies to broker assessments, metrics in the insurance industry indicate that Chartis remains one of the most financially secure insurance organizations
- Our financial strength combined with our experience, global reach and broad range of product and service offerings, solve the insurance needs of 40 million clients worldwide

---

**STAYING POWER**
Our consistent market leadership and commitment has lasted for over 40 years, while other carriers shift their focus and support from year-to-year. Our global underwriting capacity, philosophy and expertise-coupled with our local presence-enables Executive Liability to assess the most complex risks and respond rapidly when unforeseen events occur.

---

1 Towers Perrin 2008 Directors and Officers Liability Survey.

2 Does not include Programs or Small Business accounts.

3 NERA Economic Consulting.

4 Year ended December 31, 2008.

## INNOVATIVE SOLUTIONS

**Passport:** State-of-the-market way for multinationals to secure locally-admitted insurance that is in sync with local requirements and customs, and written in local language worldwide.

**Specialty Risk Protector**<sup>SM</sup>**:** A modular package of professional liability and data network security coverages for all types of businesses. Businesses can bundle multiple lines of coverage into one policy.

**Corporate Counsel Premier® :** Provides general counsel and other in-house attorneys employed by public and private companies with coverage for claims alleging professional malpractice.

**Lawyers Professional Liability Program:** This admitted program provides broad coverage for attorneys and includes crisis management coverage to help mitigate damage to a law firm's reputation.

**Personal Identity Coverage:** Enables organizations to extend expert assistance and financial relief to employees, customers or members who are victims of identity theft. This innovative program combines extensive recovery support as well as reimbursement of costs related to a theft incident.

**Public Entity Plan and Trustee Protector:** A policy that protects individuals who manage governmental entity employee benefit plans from fiduciary liability exposures.

**Financial Institutions Risk Protector® :** A modular package of directors and officers and professional liability coverages for private and public financial institutions. Coverages can be bundled into one policy to provide flexible protection tailored for a financial institution's full spectrum of management and professional liability risks.

**EPL Pak®Premier:** The Employment Practices Liability Loss Prevention Pack offered through Jackson Lewis, LLP,helps insureds proactively mitigate employment practices exposures. The program includes both training programs that help instill proper employment practices within an organization and resources to keep employers informed of changing statutes, regulations and court decisions shaping the employment landscape.

**CrisisFund®:** Built-in crisis management enhancement provides policyholders with professional support, including a 24-hour hotline with access to claims specialists, and immediate funds in the event of a serious crisis. Up to $250,000 of additional policy limits available to cover immediate expenses and an additional $50,000 limit to retain the services of a public relations or crisis management firm.

**Fidelity Research and Investigative Settlement Clause (FRISC):** A unique provision in Fidelity policies that allows the insured to select an investigative specialist or forensic accountant to determine the facts of the case and quantify the loss. This sets the stage for an efficient, cooperative loss investigation and settlement process that can save the insured time and money. Even if the loss is ultimately determined to not be covered under the policy, the insurer still pays half of the investigation expenses.

**PrivateEdge Plus:** A flexible modular package that offers market-leading management and professional liability coverage for private companies of any size. Choose one or combine multiple coverage options to customize a comprehensive program that meets specific business needs.

**eDiscovery Solutions:** A litigation-management tool devised to create a strategy to handle the collection of electronically stored information throughout litigation.

**Panel Counsel:** Comprised of some of the nation's premier litigators who specialize in defending securities, employment practices, fiduciary liability and technology litigation. Participating law firms have a proven record of achieving litigation success while maximizing litigation efficiency. Consistent superior performance is required to maintain a position on the panel.

**Policy Issuance:** Centralized Service Center facilitates standardization and efficiencies that result in greater policy accuracy and faster turnaround time.

**eDelivery:** A leading web-based system that enables the electronic delivery of policies and midterm endorsements in PDF format.

For more information about Executive Liability, please contact us at executiveliability@chartisinsurance.com or visit www.chartisinsurance.com.



**CHARTIS**
**Your world, insured**

Chartis is a world leading property-casualty and general insurance organization serving more than 40 million clients in over 160 countries and jurisdictions. With a 90-year history, one of the industry's most extensive ranges of products and services, deep claims expertise and excellent financial strength, Chartis enables its commercial and Personal insurance clients alike to manage virtually any risk with confidence.

Chartis is the marketing name for the worldwide property-casualty and general insurance operations of Chartis Inc. For additional information, please visit our website at www.chartisinsurance.com.

All products are written by insurance company subsidiaries or affiliates of Chartis Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from the Chartis companies.  Chartis insurance companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at www.chartisinsurance.com/producercompensation  or by calling 1-800-706-3102.


# CHARTIS

**National Union Fire Insurance Company of Pittsburgh, Pa.** ®

A capital stock company

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 OF THE POLICY.**

POLICY NUMBER: *01-361-35-23*       REPLACEMENT OF POLICY NUMBER: *94-555-75-87*

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | **NAMED ENTITY:** *SILICON STORAGE TECHNOLOGY, INC.*<br>(herein **"Named Entity"**) | |
| 1(a) | MAILING ADDRESS: *1171 SONORA CT*<br>*SUNNYVALE, CA 94086-6538* | |
| 1(b) | STATE OF INCORPORATION/FORMATION: *California* | |
| 2 | **POLICY PERIOD:** From: *November 16, 2009*   To: *November 16, 2010*<br>12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3 | **POLICY AGGREGATE LIMIT OF LIABILITY**<br>(herein **"Limit of Liability"**)<br>For all **Loss,** in the aggregate, under this policy<br>including **Defense Costs:**    *$10,000,000* | |
| 4 | **RETENTION:** Not applicable to **Non-Indemnifiable Loss** and certain **Defense Costs** -<br>(See Clause 6 for details.) | |
| 4(a) | **Securities Claims:** *$350,000* | 4(b) **Employment Practices Claims:** *$150,000* |
| 4(c) | All other **Claims:** *$150,000* | |

*7116427*

© All rights reserved.

| ITEMS (continued) | | | | |
|---|---|---|---|---|
| 5<br>5(a) | **CONTINUITY DATE** (herein "**Continuity Date**")<br>Coverages A and B, other than<br>**Outside Entity Executive**<br>coverage:  *November 16, 1995* | 5(b) | **Outside Entity Executive** coverage, including Coverage C: | The date on which the **Insured Person** first served as an **Outside Entity Executive** of such **Outside Entity**. |
| 5(c) | Coverage D:  *November 16, 2000* | | | |

| 6 | PREMIUM: *$169,538* |
|---|---|
| | *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $4,938 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows:  85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*<br>*A copy of the TRIA disclosure sent with the original quote is attached hereto.* |

| 7<br>7(a) | **CRISISFUND**<sup>SM</sup> limit:<br>**Crisis Loss:** *$50,000* | 7(b) | Additional **CRISISFUND**<sup>SM</sup> for **Delisting Crisis Loss:** *$25,000* |
|---|---|---|---|

| 8 | **NAME AND ADDRESS OF INSURER** (herein "**Insurer**"):<br>*National Union Fire Insurance Company of Pittsburgh, Pa.*<br>*175 Water Street*<br>*New York, NY 10038-4969*<br><br>This policy is issued only by the insurance company indicated in this Item 8. |
|---|---|

*7116427*

75010 (2/00)                    2                    © All rights reserved.

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Andrew N. Holland_
_____
SECRETARY

_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____ _____ _____
COUNTERSIGNATURE DATE COUNTERSIGNED AT

_MARSH RISK & INSURANCE SERVICES_
_345 CALIFORNIA ST, SUITE 1300_
_SAN FRANCISCO, CA 94104_

_7116427_

75010 (2/00)

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON- CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *SILICON STORAGE TECHNOLOGY, INC.*

Policy Number: *01-361-35-23*
Policy Period Effective Date From: *November 16, 2009*   To: *November 16, 2010*



## CHARTIS

### National Union Fire Insurance Company of Pittsburgh, Pa.®

A capital stock company

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

### 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

#### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

#### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability*: This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person*: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

#### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

#### COVERAGE D: CRISISFUND ᴼᴹ INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund** ˢᴹ, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

### 2. DEFINITIONS

(a) **"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

© All rights reserved.

the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) "**Claim**" means:

(1) a written demand for monetary, non-monetary or injunctive relief;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

(i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

(ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

(c) "**Crisis**" has the meaning as defined in Appendix B attached to this policy.

(d) "**CrisisFund** $^{SM}$" means:

(1) in the case of all **Crisis Loss**, other than **Delisting Crisis Loss**, the dollar amount set forth in Item 7(a) of the Declarations; and

(2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) "**Crisis Loss**" has the meaning as defined in Appendix B attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

(g) "**Employee**" means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

(h) "**Employment Practices Claim**" means a **Claim** alleging any **Employment Practices Violation**.

(i) "**Employment Practices Violation**" means any actual or alleged:

75011 (2/00)         2         © All rights reserved.

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, **"Employment Practices Violation"** shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j) **"Executive"** means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(k) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(l) **"Foreign Policy"** means the **Insurer's** or any other company Chartis Inc.'s (Chartis) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by Chartis to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **"Foreign Policy"** means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage.

(m) **"Indemnifiable Loss"** means **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

 © All rights reserved.

(n) "**Insured**" means any:

    (1) **Insured Person**; or

    (2) **Organization**, but only with respect to a **Securities Claim**.

(o) "**Insured Person**" means any:

    (1) **Executive** of an **Organization**;

    (2) **Employee** of an **Organization**; or

    (3) **Outside Entity Executive:**

(p) "**Loss**" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs** and **Crisis Loss**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

(q) "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r) "**No Liability**" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s) "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

 © All rights reserved.

(t) **"Organization"** means:

   (1) the **Named Entity**;

   (2) each **Subsidiary**; and

   (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor- in- possession (or equivalent status outside the United States), if any.

(u) **"Outside Entity"** means any: (1) not- for- profit entity; or (2) other entity listed as an **"Outside Entity"** in an endorsement attached to this policy.

(v) **"Outside Entity Executive"** means any: (1) **Executive** of an **Organization** who is or was acting at the specific written request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

(w) **"Policy Period"** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. **"Waste"** includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) **"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

   (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

      (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

      (b) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

   (2) brought derivatively on the behalf of an **Organization** by a security holder of such **Organization**.

Notwithstanding the foregoing, the term **"Securities Claim"** shall include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

(z) **"Subsidiary"** means: (1) any for- profit entity that is not formed as a partnership of which the **Named Entity** has **Management Control** ("Controlled Entity") on or before the inception of the **Policy Period** either directly or indirectly through one or more other **Controlled Entities**; and (2) any not- for- profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an **Organization**.

(aa) **"Wrongful Act"** means:

   (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation**:

© All rights reserved.

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remu-neration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

75011 (2/00)                                    6                         © All rights reserved.

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

   (1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

   (2) any **Employment Practices Claim** brought by an **Insured Person,** other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

   (3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

   (4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

   (5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

                      © All rights reserved.

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive** of an **Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

## 5.  LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)

The **Limit of Liability** stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the **CrisisFund** SM shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the **CrisisFund** SM. The **CrisisFund** SM shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs are not payable by the **Insurer** in addition to the **Limit of Liability**. Defense Costs are part of **Loss** and as such are subject to the **Limit of Liability** for **Loss**.*

© All rights reserved.

## 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i) Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii) Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii) Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a) An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1) the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2) within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

© All rights reserved.

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

*The **Insurer** does not, however, under this policy, assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the **Insurer**.*

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

© All rights reserved.

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organization** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

## 9. PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall become aware, in either

© All rights reserved.

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right, to requestan offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

   © All rights reserved.

## 12. ORGANIZATIONAL CHANGES

(a) If during the **Policy Period**:

(1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a "**Transaction**"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions*: "**Subsidiary**" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

(1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

(2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter "**Auto-Subsidiary Period**");

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives:* Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Organization** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An Organization ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

75011 (2/00)                                    13                                    © All rights reserved.

### 13. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

### 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of Chartis Inc. (Chartis) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other Chartis insurance provided to such **Outside Entity**.

### 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

### 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

### 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("**ADR**") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

                      © All rights reserved.

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

75011 (2/00)                                      15                              © All rights reserved.

## 20. SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

## 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

## 22. ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

## 23. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

                    © All rights reserved.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at http://www.briefbase.com/default.aspx at the "Panel Counsel" tab. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Panel Counsel" tab and then click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)

### APPENDIX B

## I.  DEFINITIONS

(a)  **"Crisis"** means:

    (1)  a **Delisting Crisis**; or

    (2)  one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a **"Material Effect on an Organization's Common Stock Price"**:

        (i)  *Negative earning or sales announcement*

        The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

        (ii)  *Loss of a patent, trademark or copyright or major customer or contract*

        The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

        (iii)  *Product recall or delay*

        The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

        (iv)  *Mass tort*

        The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

        (v)  *Employee layoffs or loss of key executive officer(s)*

        The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

        (vi)  *Elimination or suspension of dividend*

        The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

        (vii)  *Write-off of assets*

        The public announcement that an **Organization** intends to write off a material amount of its assets.

⊚ All rights reserved.

(viii) *Debt restructuring or default*

The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix) *Bankruptcy*

The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x) *Governmental or regulatory litigation*

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi) *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** (as defined in Clause 12(a) of the policy) of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund**$^{SM}$ has been exhausted.

(b) "**Crisis Firm**" means any public relations firm, crisis management firm or law firm as listed in section III of this Appendix B. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c) "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1) the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2) the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3) travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection  with the **Crisis**.

(d) "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

© All rights reserved.

(e) **"Delisting Crisis"** means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange.**

(f) **"Exchange"** means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) **"Material Effect on an Organization's Common Stock Price"** means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.   EXCLUSIONS

The term **Crisis** shall not include any event relating to:

(i)   any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(ii)   the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, the foregoing shall not apply if the policy contains any provision or endorsement modifying or deleting, in part or in whole, exclusion (k) of the policy; or

(iii)   the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

## III.   PRE-APPROVED CRISIS FIRMS

(a) For all **Crisis** (including a **Delisting Crisis**), **Crisis Firm(s)** means any public relations firm listed in (1) - (8) below:

1.   Abernathy MacGregor Group, Inc.
    501 Madison Avenue
    New York, New York  10022
    (212) 371-5999
    Contacts: James T. MacGregor          (jtm@abmac.com)
              Rhoda Barnat                 (rb@abmac.com)

2.   Burson-Marsteller
    230 Park Avenue South
    New York, New York  10003-1566
    (212) 614-5236
    Contact:  Michael Claes               (Michael.Claes@bm.com)

⊕ All rights reserved.

3.  Kekst and Company
    437 Madison Avenue
    New York, New York  10022
    (212) 521-4800
    Contacts: Jim Fingeroth          (Jim-Fingeroth@kekst.com)
              Lissa Perlman          (Lissa-Perlman@kekst.com)

4.  Patton Boggs, LLP
    2550 M Street, N.W.
    Washington D.C.  20037
    (202) 457-6040
    Contact:  Thomas Boggs, Esq.     (tboggs@pattonboggs.com)

5.  Reputation Partners, LLC
    105 West Adams Street, Suite 2220
    Chicago, IL  60603-6265
    (312) 222-9887
    Contacts: Nick Kalm             (nick@reputationpartners.com)
              Jane Devron           (jane@reputationpartners.com)

6.  Robinson Lerer & Montgomery
    1345 Avenue of The Americas, 4th Floor
    New York, New York  10105
    646-805-2000
    Contact:  Michael Gross          (mgross@rlmnet.com)

7.  Sard Verbinnen & Co.
    630 Third Avenue, 9th Floor
    New York, New York  10017
    (212) 687-8080
    Contacts: George Sard            (gsard@sardverb.com)
              Paul Verbinnen         (pverbinnen@sardverb.com)

8.  Sitrick And Company
    1840 Century Park East, Suite 800
    Los Angeles, CA  90067
    (310) 788-2850
    Contact:  Michael Sitrick        (mike sitrick@sitrick.com)

(b)  Solely for **Delisting Crisis**, "**Crisis Firm(s)**" shall also include any **Panel Counsel Firm** (as defined in Clause 9) approved to handle **Securities Claims**.

© All rights reserved.

**ENDORSEMENT#** *1*

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of policy number  *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that any coverage provided under this policy for punitive, exemplary or multiple damages is subject to any limitation of such coverage provided by California law, if applicable.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 001*

90143 (12/05)                                    Page 1 of 1

ENDORSEMENT# *2*

This endorsement, effective *12:01 am      November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.

*END 002*

ENDORSEMENT# *3*

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of
policy number  *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CALIFORNIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which
issued this policy;  and 2), "Named Insured", "First Named Insured", and "Insured" mean
the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named
Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all
other persons or entities afforded coverage under the policy.

The following is added any supersedes any provision to the contrary:

<u>CANCELLATION</u>

The First Named Insured shown in the declarations may cancel the policy by mailing or
delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective
immediately, the Insurer may not cancel the policy unless such cancellation is based on
one or more of the following reasons:

(1)   Nonpayment of premium, including payment due on a prior policy issued by
      the Insurer and due during the current policy term covering the same risks.

(2)   A judgment by a court or an administrative tribunal that the named Insured has
      violated any law of this state of or of the United States having as one of
      its necessary elements an act which materially increases any of the risks
      insured against.

(3)   Discovery of fraud or material misrepresentation by either of the following:

      a)   The Insured or Other Insured(s) or his or her representative in obtaining
           the insurance; or

      b)   The named Insured or his or her representative in pursuing a claim
           under the policy.

(4)   Discovery of willful or grossly negligent acts or omissions, or of any violations
      of state laws or regulations establishing safety standards, by the named
      Insured or Other Insured(s) or a representative of same, which materially
      increase any of the risks insured against.

(5)   Failure by the named Insured or Other Insured(s) or a representative of same
      to implement reasonable loss control requirements which were agreed to by the
      Insured as a condition of policy issuance or which were conditions
      precedent to the use by the Insurer of a particular rate or rating plan if the
      failure materially increases any of the risks insured against.

(6)   A determination by the commissioner that the loss of, or changes in, an
      insurer's reinsurance covering all or part of the risk would threaten the
      financial integrity or solvency of the Insurer.

⊕ All rights reserved.
*END 003*

52133 (3/07)                         Page 1 of 2

**ENDORSEMENT#** *3*     (continued)

(7)     A determination by the commissioner that a continuation of the policy coverage could place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

(8)     A change by the named Insured or Other Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the named Insured at least thirty (30) days prior to the effective date of cancellation.  Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

CONDITIONAL RENEWAL AND NONRENEWAL

If the Insurer decides not to renew the policy, or to increase the deductible, reduce the limits, eliminate coverages or raise premium more than 25%, the Insurer shall mail or deliver to the producer of record and the named Insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

A notice of nonrenewal shall not be required in the following situations:

(1)     If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the insurance group.

(2)     If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements noted above.

(3)     If the Named Insured has obtained replacement coverage, or has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4)     If the policy is for a period of no more than 60 days and the Insured is notified at the time of issuance that it will not be renewed.

(5)     If the First Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6)     If the Insurer has made a written offer to the First Named Insured, in accordance with timeframes shown above to renew the policy under changed terms or conditions or at an increased premium rate.

If the Insurer fails to give timely notice, the policy of insurance shall be continued, with no change in its terms or conditions, for a period of 60 days after the Insurer gives notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 003*

**ENDORSEMENT# 4**

This endorsement, effective  *12:01 am*     *November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## OTHER INSURANCE AND INDEMNIFICATION CLAUSE AMENDED

In consideration of  the premium charged,  it is hereby  understood and agreed  that Clause
14 **OTHER INSURANCE  AND INDEMNIFICATION** is hereby  amended by  deleting it  in its
entirety and replacing it with the following:

> Such insurance  as is  provided by  this policy  shall apply  only as  excess over  any
> other valid and collectible liability  insurance, unless such other  insurance is written
> only as specific excess insurance  over the  **Limit of Liability**  provided by this policy.
> This policy shall specifically  be excess of  any other valid  and collectible insurance
> pursuant to which  any other  insurer has  a duty to  defend a  **Claim** for  which this
> policy may be obligated to pay **Loss**.

> In the event of a  **Claim** against an  **Outside Entity Executive**, coverage as is  afforded
> by this policy, whether  under Coverage B(ii)  or Coverage  C, shall  be  specifically
> excess of:     (1) any  indemnification provided  by an  **Outside Entity**; and (2) any
> insurance coverage afforded to an   **Outside Entity**  or its **Executives**  applicable to
> such **Claim**.  Further, in the event such other  **Outside Entity** insurance is provided
> by the **Insurer**  or any  other member  company of American  International Group,  Inc.
> (AIG) (or would  be provided but  for the  application of the  retention amount,
> exhaustion of the limit of liability or failure to submit a notice of a claim as required)
> then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy
> and such  other AIG  Insurance  Policy(ies) shall  not be  greater than  each  policy's
> respective **Limit of Liability**, and  in all  events shall  be subject  to a  maximum
> aggregate **Limit of Liability**  in the  amount  of $ 30,000,000.   Nothing in this
> paragraph shall be construed  to increase the   **Limit of Liability**  afforded under each
> AIG policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                              *END 4*

ENDORSEMENT# *5*

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of
policy number    *01-361-35-23*
issued to    *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ORGANIZATIONAL CHANGES CLAUSE AMENDED**

In consideration of the premium charged, it is hereby understood and agreed that Clause
12 ORGANIZATIONAL CHANGES is hereby amended by deleting subparagraphs (1) and (2)
of paragraph (b) in their entirety and replacing them with the following:

(1)    whose assets total less than 25% of the total consolidated assets of each
and every **Organization** as reported in the most recent public filing; or

(2)    whose assets total 25% or more than the total consolidated assets of each
and every **Organization** as reported in the most recent public filing, but such
entity shall be a " **Subsidiary** " only: (i) for a period of sixty (60) days from the
date the **Named Entity** first had **Management Control** of such entity; or (ii)
until the end of the **Policy Period**, whichever ends or occurs first (hereinafter
" **Auto-Subsidiary Period** ");

provided, that, in reference to 12(b)(1) above, the **Named Entity** or any other **Insured** are
only required to report any acquisitions whose assets total less than 25% prior to renewal
of this policy; and in all other circumstances, the **Named Entity** or any other **Insured** shall
report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**ENDORSEMENT# *6***

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXCLUSION (m) AMENDED ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS, is hereby amended by deleting Exclusion (m) in its entirety and replacing it with the following:

(m)   for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(1)   the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2)   improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(3)   failure to provide or enforce legally required meal or rest break periods;

Notwithstanding the foregoing, this exclusion (m) shall not apply to the extent that a **Claim** is for retaliation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 006*

90496 (3/08)                          Page 1 of 1

## ENDORSEMENT# *7*

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*


by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" PROVISION DELETED
### (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS
### ARISING OUT OF A SECURITIES CLAIM)

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

(1)  The Definition of and all provisions referring to **"No Liability"** are hereby deleted in
their entirety.

(2)  Clause 6 **RETENTION CLAUSE** is deleted in its entirety and replaced by the
following:

**6.  RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss**
arising from a **Claim** which is in excess of the applicable Retention amounts
stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts
to be borne by an **Organization** and/or the **Insured Person** and remain
uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The
Retention amount specified in:

(i)   Item 4(a) applies to **Loss** that arises out of a **Securities Claim**;

(ii)  Item 4(b) applies to **Loss** that arises out of an **Employment Practices
Claim**; and

(iii) Item 4(c) applies to **Loss** that arises out of any **Claim** other than a
**Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging
the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated
in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the
highest of such Retention amounts shall be deemed the Retention amount
applicable to **Loss** (to which a Retention is applicable pursuant to the terms of
this policy) arising from such **Claim**.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

(3)  Item 4 of the Declarations is hereby deleted in its entirety and replaced by the
following:

| 4 | RETENTION:  Not applicable to **Non-Indemnifiable Loss** | | |
|---|---|---|---|
| 4(a) | Securities Claims: *$350,000* | 4(b) | Employment *$150,000* Practices Claims: |
| 4(c) | All other **Claims**:  *$150,000* | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
### END 007

89371 (5/05)                    Page 1 of 1

**ENDORSEMENT#** *8*

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE OF CLAIM
(REPORTING BY E- MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
    Claim Reporting under this policy, such notice may also be given in writing pursuant
    to the policy's other terms and conditions to the Insurer by email at the following
    email address:

    c- claim@chartisinsurance.com

    Your email must reference the policy number for this policy. The date of the
    Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the
    Insurer by mailing such notice to: c- Claim for Financial Lines, Chartis Claims, Inc.,
    175 Water Street, 9th Floor, New York, New York 10038 or faxing such notice to
    (866) 227- 1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)  "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
         specifically ascribed in this policy as the insurance company or underwriter for
         this policy.

    (b)  "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
         loss" or other reference in the policy designated for reporting of claims, loss
         or occurrences or situations that may give rise or result in loss under this
         policy.

    (c)  "Policy" means the policy, bond or other insurance product to which this
         endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
    Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 008*

### ENDORSEMENT# 9

This endorsement, effective 12:01 am     November 16, 2009     forms a part of
policy number   01-361-35-23
issued to   SILICON STORAGE TECHNOLOGY, INC.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

### EXCLUSION (i) AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 4 EXCLUSIONS is hereby amended by deleting subparagraph (2) of Exclusion (i) in its entirety and replacing it with the following:

(2)     any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Named Entity**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**ENDORSEMENT# 10**

This endorsement, effective *12:01 am*    *November 16, 2009*    forms a part of
policy number  *01-361-35-23*
issued to    *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CLAUSE 7 (a) AMENDED

In consideration of the premium charged, it is hereby understood  and agreed that Clause 7
**NOTICE/CLAIM REPORTING PROVISIONS** is hereby amended by  deleting subparagraph (a)
in its entirety and replacing it with the following:

(a)    An **Organization** or an **Insured** shall, as a  condition precedent to  the
obligations of the **Insurer** under this policy, give  written notice to the  **Insurer**
of a **Claim** made against an **Insured** or a **Crisis** (if CrisisFund coverage is
desired for such matter) as  soon as practicable: (i)  after the  **Named Entity's**
Risk Manager or General Counsel (or equivalent position) first becomes
aware of the  **Claim**; or (ii)  the **Crisis** commences,  but in all  events no  later
than either:

(1)    the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2)    within 60  days after  the end  of the   **Policy  Period**  or  the **Discovery
Period** (if applicable), as long as such  **Claim** was first made against an
**Insured** within the final 60 days  of the **Policy Period** or  the **Discovery
Period** (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                           *END 10*

## ENDORSEMENT# *11*

This endorsement, effective *12:01 am*   *November 16, 2009*   forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXTRADITION COVERAGE
#### *(2/2000 Version)*

In consideration of the premium charged, it is understood and agreed that, where permitted by law:

1.  **"Claim"** also means any:

    (a)   official request for **Extradition** of any **Insured Person**; or

    (b)   the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

2.  **"Defense Costs"** also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Insured Person** lawfully:

    (a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or

    (b)   appealing any order or other grant of **Extradition** of that **Insured Person**.

3.  **"Extradition"** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4.  Clause 9 does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

All rights reserved.
*END 011*

**ENDORSEMENT# *12***

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2.  This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

3.  "Policyholder" means the first Named Entity, Named Organization, Named Corporation, Named Sponsor, Named Insured or other policyholder designated in Item 1 of the Declarations of this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 012*

94039 (5/07)                    Page 1 of 1

**ENDORSEMENT# *13***

This endorsement, effective *12:01 am*     *November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF EXCLUSIONS
### BROAD FORM
### CEO, CFO & GC

In consideration of the premium charged, it is hereby understood and agreed that Clause
4. **EXCLUSIONS** is amended by deleting the last two paragraphs thereof in their entirety
and replacing them with the following:

> For the purpose of determining the applicability of the foregoing Exclusions, except
> for Exclusions 4(d), 4(e) and 4(i): (1) the facts pertaining to and knowledge
> possessed by any **Insured** shall not be imputed to any other **Insured Person**; and
> (2) only facts pertaining to and knowledge possessed by any past, present or future
> chief executive officer, chief financial officer or General Counsel (or equivalent
> position) of an **Organization** shall be imputed to an **Organization**.

> This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 013*

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am*   *November 16, 2009*   forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INVESTIGATION COSTS
### FOR DERIVATIVE DEMANDS

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   Clause 1 **INSURING AGREEMENTS** is amended to add the following new insuring agreement:

**COVERAGE E: INVESTIGATION COSTS FOR DERIVATIVE DEMANDS**

This policy shall pay the **Investigation Costs** of the **Organization** arising from an **Investigation** in response to a **Derivative Demand** first made upon the **Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy.

2.   Clause 5 **LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)** is amended to add the following:

The maximum limit of the **Insurer's** liability for **Investigation Costs** arising from all **Investigations** combined occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be *$250,000* . This limit shall be the maximum limit of the **Insurer** under this policy regardless of the number of such **Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Investigations**. Provided, however, that the **Investigation Costs** limit shall be part of and not in addition to the **Limit of Liability**  stated in the Declarations of this policy, which shall, in all events, be the maximum liability of the **Insurer** for all **Loss** under this policy.

3.   There shall be no Retention amount applicable to **Investigation Costs**, and the **Insurer** shall pay such **Loss** from first dollar, subject to the other terms, conditions and limitations of this endorsement and this policy.

4.   It shall be the duty of the **Organization** and not the duty of the **Insurer** to conduct, investigate, and evaluate any **Investigation** against its own **Executives**, provided that the **Insurer** shall be entitled to effectively associate in the **Investigation** and in the evaluation and negotiation of any settlement of any such **Investigation**.

5.   Nothing in this endorsement shall be construed to afford coverage under this policy for any **Claim** brought by the **Organization** against one or more of its own **Executives** other than **Investigation Costs** incurred in a covered **Investigation**. Payment of any **Investigation Costs** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

6.   The **Organization** shall be entitled to payment of its covered **Investigation Costs** 90 days after: (i) it has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and (ii) such decision has been communicated to the **Complaining Shareholders**. Such payment shall be subject to an undertaking by the **Organization** , in a form acceptable to the **Insurer**, that the **Organization** shall return to the **Insurer** such payment in the event any

⊕ All rights reserved.
### *END 014*

**ENDORSEMENT#** *14*   (continued)

**Organization** or **Complaining Shareholders** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

7.   Solely for the coverage extended by this endorsement under Coverage E, the following shall apply:

"**Claim**" shall also mean any **Derivative Demand**.

"**Complaining Shareholder**" means any shareholder or shareholders, other than any **Insured**, that makes a **Derivative Demand**.

"**Derivative Demand**" means a written demand by shareholders upon the board of directors (or equivalent management body) of an **Organization** asking it to bring, on behalf of the **Organization**, a civil proceeding in a court of law against any **Executive** of the **Organization** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

"**Investigation**" means the investigation by the **Organization** or, on behalf of the Organization by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Organization** should bring the civil proceeding demanded in the **Derivative Demand**.

"**Investigation Costs**" means reasonable and necessary costs, charges, fees and expenses (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of the **Executives** or **Employees** of the **Organization**) incurred by the **Organization** or its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), incurred solely in connection with an **Investigation**.

"**Loss**" shall also mean **Investigation Costs**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 014*

**ENDORSEMENT#** *15*

This endorsement, effective *12:01 am*     *November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**OUTSIDE ENTITY EXECUTIVE**
**(No Written Request)**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 2. **DEFINITIONS**, paragraph ( ), **Outside Entity Executive**, is hereby deleted in its
entirety and replaced with the following:

   ( )   "**Outside Entity Executive**" means any: (1) **Executive** of an **Organization** who
         is or was acting at the specific request or direction of an **Organization** as an
         **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside
         Entity Executive** in an endorsement attached to this policy.

         It is further understood and agreed that, in the event of a disagreement
         between the **Organization** and an **Outside Entity Executive** as to whether
         such **Insured** was acting "at the specific request or direction of the
         **Organization**," it is hereby understood and agreed that this policy shall abide
         by the determination of the **Organization** on this issue and such determination
         shall be made by written notice to the **Insurer** within ninety (90) days after
         the **Claim** against such **Outside Entity Executive** is made.  In the event no
         determination is made within such period, this policy shall apply as if the
         **Organization** determined that such **Outside Entity Executive** was not acting
         at the **Organization's** specific request or direction.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE

® All rights reserved.
*END 015*

ENDORSEMENT# *16*

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DOMESTIC PARTNER COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that such coverage as is afforded by this policy pursuant to Clause 20. **SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION** to the lawful spouse of an **Insured Person** under this policy shall also extend to any **"Domestic Partner"** of such **Insured Person**, whether or not such person would be deemed a "spouse" under the applicable law.

**"Domestic Partner"** means any individual person legally recognized as a domestic or civil union partner under: (1) the provisions of any applicable federal, state, or local law; or (2) the provisions of any formal program established by the **Named Entity** or any **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
**END 016**

**ENDORSEMENT# 17**

This endorsement, effective *12:01 am    November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (SHAREHOLDER CARVE- OUT)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** for the **Organization's** or any **Insured's** performance of or failure to perform professional services for third parties for a fee, or any act(s), error(s) or omission(s) relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement shall not apply to any **Securities Claim(s)**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                              *END 17*

**ENDORSEMENT# *18***

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of exclusions (d) or (e) of the policy, the **Insurer** shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions referred to in any of items (1) through (6) below; (hereinafter " **Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

    <u>EVENTS</u>

    (1) In re Silicon Storage Technology, Inc., Securities Litigation, Case No. C 05 00295 PJH (N.D. Cal.).

    (2) Re Silicon Storage Technology, Inc. Derivative Litigation, Lead Case No. 1:05CV034387 (Cal. Super. Ct., Santa Clara Co.).

    (3) Brien v. Yeh, et al., Case No. C06-04310, filed in the United States District Court for the Nothern District of California.

    (4) Bazargani v. Yeh, et al., Case No. C06-04388, filed in the United States District Court for the Nothern District of California.

    (5) Chuzhoy v. Yeh, et al., filed in the California Superior Court (Santa Clara County)

    (6) Any action(s) filed by a securities holder(s) of an **Organization** (including any shareholder class action(s)) making the same or related allegations as the allegations made in the derivative action referred to in paragraphs (1) above, or any such action(s) alleging, arising out of, based upon or attributable to any of the events referred to in paragraphs (1), (5) above, including without limitation any consolidated class action resulting from the consolidation or any one or more of such shareholder actions.

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with:

    (A)  any restatement, retraction, amendment or revision of in part or in whole:

        (i) any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange

**ENDORSEMENT#** *18* **(Continued)**

This endorsement, effective *12:01 am*    *November 16, 2009*    forms a part of
policy number  *01-361-35-23*
issued to  *SILICON STORAGE TECHNOLOGY, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

(j)  Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports); or

(ii)  any written or oral statement made regarding the assets, revenues, sales or financial condition of the **Organization**,

alleging, arising out of, based upon or attributable to any **Event** or the resolution of said **Events**; and

(B)  any **Claim** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an " **Interrelated Wrongful Act** " means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as or related to of any **Wrongful Act** alleged in any **Event(s)**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 18*

ENDORSEMENT# *19*

This endorsement, effective *12:01 am*     *November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SCIENTIFIC ADVISORY BOARD MEMBER EXTENSION

In consideration of the premium charged, it is hereby understood and agreed as follows:

Clause 2. **DEFINITIONS**, paragraph (o), definition of " **Insured Person,** " shall be amended by
deleting subparagraph (3) thereof and by adding the following at the end thereof:

    (3) **Outside Entity Executive** ; or
    (4) **Scientific Advisory Board Member** .

Clause 2(aa), definition of " **Wrongful Act,**" shall be amended by adding the following
subparagraph at the end thereof:

    (3) with respect to any **Scientific Advisory Board Member** :

        (a) any actual or alleged breach of duty, neglect, error, misstatement,
        misleading statement, or omission in the provision of advice or counsel to
        any **Executive** of any **Organization** or act by a **Scientific Advisory Board** in its
        capacity as such (hereinafter **"Scientific Advisory Board Act"** ); and

        (b) any **Scientific Advisory Board Act** attributed or imputed to an **Scientific
        Advisory Board Member** solely by reason of his or her status as an **Scientific
        Advisory Board Member**,

    but solely as long as such **Claim** is also made and continuously maintained against
    an **Executive** of an **Organization**;

It is further understood and agreed that, notwithstanding anything stated above, the
**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured** alleging, arising out of, based upon or attributable to the
**Organization's** or any **Insured's** performance of or failure to perform professional services
for others, or any act(s), error(s) or omission(s) relating thereto.

For the purpose of the applicability of the coverage provided by this endorsement, the
**Organization** will be conclusively deemed to have indemnified the **Scientific Advisory Board
Members** to the extent that such **Organization** is permitted or required to indemnify such
**Scientific Advisory Board Members** pursuant to law, common or statutory, or contract, or
its charter or by-laws. The **Organization** hereby agrees to indemnify the **Scientific Advisory
Board Members** to the fullest extent permitted by law, including the making in good faith
of any required application for court approval.

MNSCPT                                          *END 19*

**ENDORSEMENT#** *19*    **(Continued)**

This endorsement, effective  *12:01 am*     *November 16, 2009*     forms a part of policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further  understood  and  agreed  that  such coverage  provided pursuant to  this endorsement to any  **Scientific Advisory  Board Member** shall be specifically excess, on a non-follow form basis, over any other insurance, including without limitation any errors and omission or professional liability insurance. With  respect  to such coverage provided pursuant to this endorsement to any **Scientific  Advisory Board Member**, this policy shall specifically be excess of any other insurance  pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss.**

Furthermore,  for  the  purpose  of  the  applicability  of  the  coverage  provided  by  this endorsement, the **Insurer** shall  not  be  liable  for any  **Loss** in connection with any **Claim** made against any **Scientific Advisory Board Member** :

(1) alleging,  arising  out  of,  based  upon  or  attributable  to  as  of  such   **Scientific Advisory Board Member's** respective **Advisory Board Continuity Date**, any pending or prior: (1) litigation against such **Scientific  Advisory  Board  Member** ; or (2) administrative  or  regulatory  proceeding  against such  **Scientific  Advisory  Board Member** or  investigation  of  such  **Scientific  Advisory  Board  Member** which an **Insured** had  notice, or  alleged or  was derived  from the  same or  essentially the same facts  as  alleged  in  such pending  or prior litigation  or administrative  or regulatory proceeding or investigation;

(2) alleging any **Wrongful Act**  of such  **Scientific  Advisory  Board  Member**  occurring prior  to such  **Scientific  Advisory  Board  Member's**  respective  **Advisory  Board Continuity Date**, if any **Insured** knew or could have reasonably  foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to a   **Claim** made against  each  **Scientific  Advisory  Board  Member**  shall  only  apply  for **Wrongful Acts** occurring prior  to the  time that  such **Scientific  Advisory  Board  Member** ceased  to be a **Scientific Advisory Board Member** .

Solely for purposes of this endorsement:

" **Scientific Advisory Board** " means [NAME THE BOARD AND  REFER TO THE  DOCUMENT IT WAS CREATED UNDER]

MNSCPT                    *END 19*

**ENDORSEMENT#** *19*   **(Continued)**

This endorsement, effective *12:01 am*    *November 16, 2009*    forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**"Scientific Advisory Board Continuity Date"** means the  effective date  and time on  which
the **Scientific Advisory Board Member** was duly elected  or appointed  to the   **Advisory
Board**.

" **Scientific Advisory Board Member** " means  any past,  present  or future  duly elected  or
appointed member of a **Scientific Advisory Board** .

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                                          *END 19*

**ENDORSEMENT# 20**

This endorsement, effective  *12:01 am*     *November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to    *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### APPLICATION DEFINITION AMENDED 12 MONTHS BACK

In consideration of the premium charged, it is hereby understood and agreed that the Definition of **Application** is hereby deleted in its entirety and replaced by the following:

**"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the Insurer, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** within the last twelve (12) months (prior to the inception date of this policy) with the Securities and Exchange Commission (SEC) (or any similar federal, state, local or foreign regulatory agency), including, but not limited to, the **Organization's** Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                              *END 20*

**ENDORSEMENT#** *21*

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAIM DEFINITION - REQUESTS TO TOLL STATUTE OF LIMITATIONS

In consideration of the premium charged, it is hereby understood and agreed that Clause
2(b), definition of "**Claim**," shall be amended by adding the following subparagraph (4) as
follows:

(4)   the receipt by an **Insured** of any written request to toll a period or statute of
      limitations which may be applicable to any **Claim** that may be made for any
      **Wrongful Act** of any **Insured**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 021*

ENDORSEMENT# *22*

This endorsement, effective *12:01 am*      *November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 21 - DELETE MATERIALITY

In consideration of the premium charged, it is hereby understood and agreed that Clause 21. **RENEWAL APPLICATION PROCEDURE** is deleted in its entirety and replaced with the following:

21.   **RENEWAL APPLICATION PROCEDURE**

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 022*

96347 (10/07)                    Page 1 of 1

## ENDORSEMENT# *23*

This endorsement, effective *12:01 am*   *November 16, 2009*   forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CRISISPLUS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

I.   **CRISISFUND$^{SM}$AMENDED**

(1)   Solely for the purposes of a **Financial Statement Crisis**, Appendix B is
hereby amended as follows:

(i)   Definition (a) **Crisis** shall also mean:

(3)   a **Financial Statement Crisis**.

(ii)   Clause III **PRE-APPROVED CRISIS FIRMS**, is hereby amended by
adding the following at the end thereof:

(c)   Solely for **Financial Statement Crisis**, "**Crisis Firm(s)**" means
any **Panel Counsel Firm** (as defined in Clause 9) approved to
handle **Securities Claims** and/or any public accounting firm.

(iii)   Definition (d) **Crisis Services** is hereby deleted in its entirety and
replaced by the following:

"**Crisis Services**" means any legal or accounting services performed
by a **Crisis Firm(s)** in investigating and responding to a **Financial
Statement Crisis**.

(iv)   The following additional definitions are hereby added:

"**Financial Statement Crisis**" means the written public
announcement by an **Organization** of the need or potential need
for a restatement(s) of an **Organization's** previously publicly filed
financial statements; provided however, that **Financial Statement
Crisis** shall not include any announcements regarding
restatement(s) resulting, in whole or in part, from a change in any
rule, law or statute relating to financial reporting (including but not
limited to any change in Generally Accepted Accounting Principles);
further provided that payment of any **Crisis Loss** under this policy
shall not waive any of the **Insurer's** rights under this policy or at
law.

"**Financial Statement Crisis Loss**" means a **Crisis Loss** resulting
solely from a **Financial Statement Crisis**.

(2)   Definition (d) **CrisisFund**$_{SM}$ is hereby deleted in its entirety and replaced
by the following:

(d)   "**CrisisFund**$_{SM}$" means:

(1)   in the case of all **Crisis Loss**, other than **Delisting Crisis
Loss** and **Financial Statement Crisis Loss**, the dollar amount

◊ All rights reserved.

*END 023*

ENDORSEMENT# *23*   (continued)

set forth in Item 7(a) of the Declarations; and

(2)  in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations (less any **Crisis Loss** paid) plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(3)  in the case of **Financial Statement Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations (less any **Crisis Loss** paid) plus the additional dollar amount set forth in Item 7(c) of the Declarations.

(3)  Item 7 of the Declarations is hereby amended to include the following additional Item 7(c):

| | |
|---|---|
| **7(c)** | Additional **CRISISFUND**<sup>SM</sup> for **Financial Statement Crisis Loss**: *$25,000* |

## II.  DEFINITION OF EXECUTIVE AMENDED

Definition (j) **Executive** is hereby amended to include the following:

**Executive** as defined in (j)(1)-(3) above or any **Employee** of an **Organization** serving as a past, present or future member of any internal committee established by and for an **Organization**, including but not limited to an **Organization's** "audit committee," as that committee is described in the Securities and Exchange Commission Release No. 34-42266-Audit Committee Disclosure Rule

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.
*END 023*

**ENDORSEMENT#** *24*

This endorsement, effective *12:01 am      November 16, 2009*        forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAIM DEFINITION AMENDED- WELLS NOTICE

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 2. **DEFINITIONS**, paragraph (b), "**Claim**," subparagraph (3) is deleted in its entirety
and replaced with the following:

    (3)    a civil, criminal, administrative or regulatory investigation of an **Insured Person:**

        (i)    once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

        (ii)   in the case of an investigation by the SEC or a similar state or foreign government authority, after:

            1.    the service of a subpoena upon the **Insured Person**; or

            2.    once the **Insured Person** is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of securities or other laws by such person.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 024*

98913 (4/08)                        Page 1 of 1

**ENDORSEMENT#** *25*

This endorsement, effective *12:01 am*     *November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SECURITIES CLAIM DEFINITION - COMMON LAW

In consideration of the premium charged, it is hereby understood and agreed that the policy's definition of **"Securities Claim,"** is deleted in its entirety and replaced with the following:

(y)     **"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

(1)     alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

(a)     brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

(b)     brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **Organization**; or

(2)     brought derivatively on the behalf of an **Organization** by a security holder of such **Organization**, relating to a **Securities Claim** as defined in subparagraph (1) above.

Notwithstanding the foregoing, the term **"Securities Claim"** shall:

(1)     include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and

(2)     not include any **Claim** brought by any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of an **Organization.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 025*

ENDORSEMENT# *26*

This endorsement, effective *12:01 am*      *November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CONDUCT EXCLUSIONS**
**FINAL ADJUDICATION**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 4. **EXCLUSIONS**, paragraphs (a), (b) and (c) are deleted in their entirety and
replaced with the following:

(a)    arising out of, based upon or attributable to the gaining of any profit or
advantage to which any final adjudication establishes the **Insured** was not
legally entitled;

(b)    arising out of, based upon or attributable to payments to an **Insured** of any
remuneration without the previous approval of the stockholders or members
of an **Organization**, once any such unapproved payments shall be established
by any final adjudication to have been illegal;

(c)    arising out of, based upon or attributable to the committing of any deliberate
criminal or deliberate fraudulent act by the **Insured** if any final adjudication
establishes that such deliberate criminal or deliberate fraudulent act was
committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◎ All rights reserved.
***END 026***

94189 (3/07)                          Page 1 of 1

**ENDORSEMENT#** *27*

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION
### CREDITORS COMMITTEE REFERENCED AND WHISTLEBLOWER

In consideration of the premium charged, it is hereby understood and agreed that Clause 4. EXCLUSIONS, paragraph (i) is amended as follows:

(1)   Subsection (3) is hereby deleted in its entirety and replaced with the following:

   (3)   in any bankruptcy proceeding by or against an **Organization**, when such **Claim** is brought by the examiner, trustee, receiver, creditors' committee (if permitted by the bankruptcy court, whether characterized as on behalf of the estate, a bankruptcy trustee, or derivatively on behalf of a debtor in possession), trust, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

(2)   The following subsection (6) is added to the end of exclusion (i):

   (6)   any **Executive** engaging in any protected "whistleblower" activity specified in 18 U.S.C. 1514A(a) or any other similar "whistleblower" protection provided under any state, local or foreign securities laws.

   Subsection (6) of Exclusion 4(i) shall not apply where the actions of any **Executive** includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than *de minimus* assistance) in the filing or prosecution of any proceeding against an **Insured** relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a proceeding that is brought by the Securities and Exchange Commission, any similar state, local or foreign regulatory body that regulates securities, or any state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

® All rights reserved.
*END 027*

**ENDORSEMENT#** *28*

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**INSURED V. INSURED EXCLUSION AMENDED - 3 YEARS**

In consideration of the premium charged, it is hereby understood and agreed that Clause
4. **EXCLUSIONS**, Exclusion (i), shall be amended by deleting subparagraph (4) thereof and
replacing it with the following:

(4)   any **Claim** brought by any past **Executive** of an **Organization** who has not
served as a duly elected or appointed director, officer, trustee, governor,
management committee member, member of the management board, General
counsel or Risk Manager (or equivalent position) of or consultant for an
**Organization** for at least three (3) years prior to such **Claim** being first made
against the **Named Entity**; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◎ All rights reserved.
*END 028*

ENDORSEMENT# *29*

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
WITH EXCEPTION FOR NON-INDEMNIFIABLE LOSS**

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**; or

   (3)   the furnishing by an **Insured** or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**;

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

Notwithstanding the foregoing, this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**.

As used in this endorsement:

**"Cleanup Costs"** means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**, **Hazardous Properties** and **Waste**.

© All rights reserved.
*END 029*

ENDORSEMENT# *29*   (continued)

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear facility**" means:

    (a)    any nuclear reactor;

    (b)    any equipment or device designed or used for
        (1) separating the isotopes of uranium or plutonium,
        (2) processing or utilizing spent fuel, or
        (3) handling, processing or packaging wastes;

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"**Nuclear Material**" means source material, special nuclear material or byproduct material.

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"**Source Material**," "**Special Nuclear Material**," and "**Byproduct Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 029*

ENDORSEMENT# *30*

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number  *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SECTION 11 OR 12 ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause
2. **DEFINITIONS**, paragraph (p) "**Loss**," is amended by deleting subparagraph (6) thereof in
its entirety and replacing it with the following:

(6)     matters which may be deemed uninsurable under the law pursuant to which
this policy shall be construed. Notwithstanding the foregoing subparagraph (6),
the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of
Section 11 or 12 of the Securities Act of 1933, as amended, the portion of any
amounts incurred by **Insureds** which is attributable to such violations
constitues uninsurable loss and shall treat that portion of all such
settlements, judgments and **Defense Costs** as constituting **Loss** under this
policy.

It is further understood and agreed that Clause **4. EXCLUSIONS** is amended by adding the
following at the end thereof:

Notwithstanding anything stated in Clause 4. **EXCLUSIONS** above, Exclusions (a) and (b)
shall not apply, in a **Securities Claim** alleging violations of Section 11 or 12 of the
Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such
violations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◎ All rights reserved.
*END 030*

95282 (8/07)                            Page 1 of 1

ENDORSEMENT# 31

This endorsement, effective *12:01 am    November 16, 2009*    forms a part of
policy number   *01-361-35-23*
issued to    *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF THE APPLICATION ENDORSEMENT WITH ADVANCEMENT

### (FULL INDIVIDUAL SEVERABILITY; TOP 2 ORGANIZATION POSITIONS IMPUTED TO ORGANIZATION; NON-RESCINDABLE A SIDE COVER)

In consideration of the premium charged, it is hereby understood and agreed as follows:

**1.    SIDE A NON-RESCINDABLE**

Solely with respect to any **Loss** of any **Insured Person** under either COVERAGE A or COVERAGE C of the policy, under no circumstances shall the coverage provided by this policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

**2.    ADVANCEMENT**

Solely with respect to this endorsement, the **Insurer** agrees to advance payments of **Loss** unless and until an order by a court of competent jurisdiction provides either that such advancement is not required or that coverage is void *ab initio*, subject to the condition that such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Organization**, severally according to their respective interests, as soon as reasonably practicable after an order provides that such advancement is not required or that coverage is void *ab initio*. Clause 17, Alternative Dispute Resolution Process, of the policy shall not apply to this paragraph.

**3.    SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** as being accurate and complete. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

The **Insureds** agree that in the event that the statements, warranties and representations contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then this policy shall be void *ab initio* solely with respect to any of the following **Insureds**:

99637 (07/08)                                  *END 31*

**ENDORSEMENT# *31*   (Continued)**

This endorsement, effective *12:01 am     November 16, 2009*      forms a part of
policy number *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

(1)   an **Organization**, under Clause 1. Insuring Agreement, COVERAGE B(ii), to
the extent it indemnifies any **Insured Person** who knew as of the inception
date of the **Policy Period**, the facts that were not accurately and completely
disclosed, and

(2)   an **Organization**, under Clause 1. Insuring Agreement, COVERAGE B(i), if any
past or present chief executive officer or chief financial officer of the
**Organization** knew as of the inception date of the **Policy Period**, the facts
that were not accurately and completely disclosed in the **Application**,

whether or not such **Insured Person** knew that such facts were not accurately and
completely disclosed in the **Application**.

For purposes of this endorsement, the **Application** will be construed as a separate
application for coverage by each **Insured Person**, and the knowledge of an **Insured
Person** shall not be imputed to any other **Insured Person**.

It is understood and agreed that this endorsement supersedes any inconsistent language
contained in the **Application**.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
99637 (07/08)                          *END 31*

ENDORSEMENT# *32*

This endorsement, effective *12:01 am     November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NEW POLICY ENDORSEMENT
(LIBERALIZATION PROVISION)**

In consideration of the premium charged, it is hereby understood and agreed that in the
event that the **Insurer** shall announce either: (1) a new Directors and Officers Insurance
policy form; or (2) a standard endorsement proving enhancements of coverage to this
policy form, which is to be made available to all **Insureds** or potential **Insureds** and for
which no additional premium is required, then the **Named Entity** shall have the right to
such new policy or such new coverage enhancement endorsement subject to all
underwriting information or particulars as the **Insurer** may require for such new policy or
enhanced coverage.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◎ All rights reserved.
*END 032*

89370 (5/05)                            Page 1 of 1

ENDORSEMENT# 33

This endorsement, effective *12:01 am*   *November 16, 2009*   forms a part of policy number  *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CLAIM DEFINITION AMENDED - FOREIGN EXECUTIVE

In consideration of the premium charged, it is hereby understood and agreed that in Clause 2. **DEFINITIONS**, paragraph  (b), " **Claim**," is deleted  in its  entirety and  replaced with  the following:

" **Claim**" means:

(1) a written demand for monetary, non-monetary or injunctive relief;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

(i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

(ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

(4) solely with respect to a " **Foreign Executive**", as such term is defined below, a criminal investigation of such " **Foreign Executive**" once such " **Foreign Executive**" has been (i) arrested; and (ii) held for more than 24 hours, in connection with any **Wrongful Act** by a policing authority of any government recognized by the United States of America.

The term " **Claim**" shall include any **Securities Claim** and any  **Employment Practices Claim**.

For purposes of this endorsement, the term " **Foreign Executive**" means an **Executive** of any **Organization** organized and operated in a **Foreign Jurisdiction**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 33*

MNSCPT

ENDORSEMENT# *34*

This endorsement, effective *12:01 am*  *November 16, 2009*  forms a part of
policy number  *01-361-35-23*
issued to  *SILICON STORAGE TECHNOLOGY, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CLAUSE 9 OF APPLICATION AMENDED**

In consideration of the Premium charged, it is hereby understood and agreed that the
following phrase from Clause 9 of the Application will be deleted

"It is agreed that the Applicant will file with the Insurer, as soon as it becomes available, a
copy of each registration statement and annual or interim report which the Applicant or
any Subsidiary may from time to time file with the SEC (or similar state or foreign
agency)."

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                                                      *END 34*

ENDORSEMENT# 35

This endorsement, effective  12:01 am   November 16, 2009   forms a part of
policy number   01-361-35-23
issued to   SILICON STORAGE TECHNOLOGY, INC.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

**EXCLUSION (D) AMENDED**

In consideration of the premium charged, it is hereby understood and agreed that Clause 2.
**EXCLUSIONS**, Exclusion (d), shall be deleted in its entirety and replaced with the following:

(d) alleging, arising  out of,  based upon  or attributable  to the  facts alleged, or  to the
same or related  **Wrongful Acts**  alleged or contained  in any   **Claim** which has  been
reported prior  to the inception  of  this policy,  or  in  any circumstances  of  which
notice has been  given, under any  directors and officers  or any  other management
liability insurance policy of which this policy is a renewal or replacement or which  it
may succeed in time;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                                 *END 35*

ENDORSEMENT# *36*

This endorsement, effective *12:01 am*     *November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### E-DISCOVERY CONSULTANT SERVICES COVERAGE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
**Insured** shall have the option to elect coverage for **E-Discovery Consultant Services** (as
defined below). To provide such coverage, this policy is amended as follows:

1.     Clause 1. **INSURING AGREEMENTS** is amended by adding the following insuring
       agreement:

       **E-DISCOVERY CONSULTANT SERVICES COVERAGE**

       This policy shall pay the **E-Discovery Loss** of any **Insured** arising from a **Securities
       Claim** made against such **Insured** for any **Wrongful Act** of such **Insured**, that is
       commenced by:

       (i)     in the case of a civil proceeding, the service of a complaint or similar
               pleading; or

       (ii)    in the case of a criminal proceeding, the return of an indictment, information
               or similar document,

       and in which **E-Discovery** is required or becomes necessary.

       The **Insured** shall select a pre-approved **E-Consultant Firm** from the list provided
       in Section 6 of this endorsement at such time that the **Insured** is required, or it
       becomes necessary for the **Insured**, to respond to a discovery request or automatic
       disclosure requirement in such **Securities Claim** by means of **E-Discovery**.

       Coverage for **E-Discovery Loss**, up to the amount of the **E-Discovery Sub-limit of
       Liability**, shall be from first dollar, provided that payment of any **E-Discovery Loss**
       under this Insuring Agreement shall not waive any of the **Insurer's** rights under this
       policy or at law.

2.     Clause 5. **LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)** is
       amended by adding the following:

       **E-DISCOVERY SUB-LIMIT OF LIABILITY**

       Solely with respect to any **E-Discovery Loss** covered under Clause 1. INSURING
       AGREEMENTS, E-Discovery Consultant Services Coverage, the maximum limit of the
       **Insurer's** liability for all **E-Discovery Loss** in the aggregate arising from all
       **Securities Claims** covered thereunder combined shall be $25,000 (hereinafter the
       "E-Discovery Sub-limit of Liability"). This **E-Discovery Sub-limit of Liability** shall
       be part of and not in addition to the aggregate **Limit of Liability** stated in the
       Declarations and will in no way serve to increase the **Insurer's Limit of Liability** as
       stated therein.

       **E-Discovery Consultant Services** shall conclude once such services are no longer
       required or necessary or when the **E-Discovery Sub-limit of Liability** has been
       exhausted, whichever comes first.

© All rights reserved.
### END 036

<u>ENDORSEMENT#</u> *36*   (continued)

It is further understood and agreed that the coverage provided under Clause 1. INSURING AGREEMENTS, E-Discovery Consultant Services Coverage, shall not waive the **Insurer's** obligation to pay **Defense Costs** (inclusive but not limited to **Defense Costs** for **E-Discovery Consultant Services**) subject to all other terms, conditions and exclusions of this policy (including but not limited to Clause 6. RETENTION CLAUSE and Clause 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)).

3.   Clause 8. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)** is amended by adding the following:

The **Insured** shall be entitled to any preferred rates for **E-Discovery Consultant Services** negotiated by the **Insurer** with the **E-Consultant Firms** for all **E-Discovery Loss** and all **Defense Costs**.

4.   Solely with respect to the coverage afforded by this endorsement, the following definitions shall apply:

**DEFINITIONS**

(a)   "**E-Consultant Firm**" means any firm listed in Section 6 of this endorsement. Any "**E-Consultant Firm**" may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer**.

(b)   "**E-Discovery**" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)   "**E-Discovery Loss**" means the reasonable and necessary consulting fees for the **E-Discovery Consultant Services** provided solely to the **Insured(s)** by an **E-Consultant Firm**.

Provided, however, **E-Discovery Loss** shall not include any costs of discovery other than **E-Discovery Loss**.

(d)   "**E-Discovery Consultant Services**" means solely the following services performed by an **E-Consultant Firm**:

1.   assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;
2.   assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;
3.   serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy; and
4.   such other services provided by the **E-Consultant Firm** that the **Insured**, **Insurer** and **E-Consultant Firm** agree are reasonable and necessary given the circumstances of the **Securities Claim**.

5.   The last sentence of Clause 6. RETENTION CLAUSE is deleted in its entirety and replaced with the following:

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss** or to **E-Discovery Loss** covered under Clause 1. INSURING AGREEMENTS, E-Discovery Consultant Services Coverage.

© All rights reserved.
*END 036*

ENDORSEMENT# *36*    (continued)

6.    **PRE- APPROVED E- CONSULTANT FIRMS**

| | |
|---|---|
| Cliff Dutton, LLC<br>121 Benevolent Street<br>Providence, RI 02906<br>Contact: Cliff Dutton<br>Phone: 401- 383- 7172<br>E- Mail: cliff.dutton@cox.net | ACT Litigation Services, Inc.<br>27200 Tourney Road, Suite 450<br>Valencia, CA 91355<br>Contact: Macyl Burke<br>Phone: 661- 284- 6401 Ext 318<br>E- Mail: mburke@actlit.com |
| Encore Legal Solutions<br>5201 Great America Parkway, Suite 320<br>Santa Clara, CA 95054<br>Contact: Jim Ramsey<br>Phone: 925- 735- 7639<br>E- Mail: jramsey@encorelegal.com | Digital Mandate<br>68 South Service Road, Suite 100<br>Melville, NY 11747<br>Contact:  Gregg Osinoff<br>Phone: 631- 577- 7944<br>E- Mail: gosinoff@digitalmandate.com |
| Protiviti<br>400 South Hope Street, Suite 900<br>Los Angeles, CA 90071<br>Contact: Frank Wu<br>Phone: 213- 327- 1509<br>E- Mail: frank.wu@protiviti.com | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.

*END 036*

**ENDORSEMENT#** *37*

This endorsement, effective *12:01 am*   *November 16, 2009*   forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**POLLUTION EXCLUSION**
**BROAD FORM SECURITIES CLAIM EXCEPTION**

In consideration of the premium charged, it is hereby understood and agreed as follows:

Exclusion (k), Pollution, other than the definition of **"Cleanup Costs"** therein, is deleted in its entirety and replaced with the following:

(k)   alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided however, this exclusion shall not apply to any:

(1)   **Non-Indemnifiable Loss**; or
(2)   **Loss** from any **Securities Claim**;

other than **Loss** that is **Cleanup Costs**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓡ All rights reserved.
*END 037*

**ENDORSEMENT#** *38*

This endorsement, effective *12:01 am*      *November 16, 2009*      forms a part of
policy number    *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that each of
the following entities shall be deemed an **"Outside Entity"**:

<u>**OUTSIDE ENTITY**</u>

1)      any not-for-profit organization

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.

*END 038*

83553 (11/03)                          Page 1 of 1

**ENDORSEMENT#** *39*

This endorsement, effective *12:01 am*      *November 16, 2009*      forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CANCELLATION PROVISION AMENDATORY
## PRO RATA PREMIUM

In consideration of the premium charged, it is hereby understood and agreed that CLAUSE 11 of the policy entitled **CANCELLATION CLAUSE** (and any endorsement amending such cancellation clause, including but not limited to any state cancellation/non-renewal amendatory attached to this policy) is hereby amended by deleting the second paragraph therein and replacing it with the following:

> If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 039*

100990 (2/09)                    Page 1 of 1

**ENDORSEMENT# 40**

This endorsement, effective *12:01 am*     *November 16, 2009*     forms a part of
policy number  *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## ADVANCEMENT OF LOSS ENDORSEMENT FINANCIAL INSOLVENCY

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1. Clause 6. **RETENTION  CLAUSE** is  amended to include  the following  paragraph at the
   end of such Clause:

   In the event an **Organization** refuses to pay an applicable Retention  due to  **Financial
   Insolvency**, then the  **Insurer**  shall  commence advancing  **Loss**  within  the  Retention
   and pursuant to the  other terms, conditions and  exclusions of this policy,  provided
   that the **Insurer** shall be entitled to recover the amount of  **Loss** advanced within  the
   Retention from  the **Organization**  pursuant to  Clause 13.  **SUBROGATION** as
   amended herein.

2. Clause 13. **SUBROGATION** is deleted in its entirety and replaced with the following:

   In the event of any payment under this policy, the  **Insurer** shall be subrogated to the
   extent of such payment to all of each and  every  **Organization's** and **Insured's** rights
   of recovery thereof, and each such  **Organization** and **Insured** shall execute all
   papers required and shall do everything that may be necessary to secure such rights
   including the execution of any  and all documents  necessary to enable the  **Insurer**
   effectively  to  bring  suit  in the  name  of each such  **Organization**  and  each such
   **Insured**.  In  no event, however,  shall the  **Insurer**  exercise its rights  of subrogation
   against an **Insured Person** under this policy unless Exclusions (a), (b) or (c) of Clause
   4. EXCLUSIONS apply with regard to such **Insured Person**.

   Notwithstanding the immediately preceding paragraph, in  the event that the  **Insurer**
   shall for any reason pay **Indemnifiable Loss** on behalf of an  **Insured Person**, in
   addition to any other  rights the **Insurer** may  have under applicable law,  the  **Insurer**
   shall have the right hereunder to recover from  the  **Organization** the amount of such
   **Loss** equal  to  the amount  of  the Retention  not satisfied by the  **Organization** and
   shall be subrogated to the rights of the  **Insured Person** hereunder.

3. For purposes of this endorsement, the following definition shall apply:

   " **Financial Insolvency** " means the: (i)  appointment by  any state or  federal official,
   agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar
   official to take control  of, supervise, manage or  liquidate a  **Organization**; or  (ii) the
   **Organization**  becoming a  debtor-in-possession pursuant  to the  United  States
   bankruptcy law, and  as to both  (i) or (ii),  the equivalent status  outside the United
   States of America.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 40*

**ENDORSEMENT# *41***

This endorsement, effective   *12:01 am*     *November 16, 2009*       forms a part of
policy number   *01-361-35-23*
issued to    *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PUNITIVE DAMAGE OTHER THAN EMPLOYMENT PRACTICES CLAIMS - CONDUCT EXCLUSION TRIGGER

In consideration of the premium charged, it is hereby understood and agreed that Definition (p) " **Loss** " is hereby amended by deleting the second paragraph thereof and replacing it with the following:

> Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) with respect to **Claims** other than **Employment Practices Claims** , punitive, exemplary and multiplied damages imposed upon an **Insured**. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiplied damages.

In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured Person** under this policy unless Exclusions (a), (b) or (c) of Clause 4. EXCLUSIONS apply with regard to such **Insured Person**. For the purpose of determining the applicability of the foregoing exclusion the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 41*

MNSCPT

**ENDORSEMENT#** *42*

This endorsement, effective *12:01 am     November 16, 2009*     forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALTERNATIVE DISPUTE RESOLUTION PROCESS CLAUSE AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that Clause
17. **ALTERNATIVE DISPUTE RESOLUTION PROCESS** is amended by deleting the last two
sentences of the third paragraph in their entirety and replacing them with the following:

> In the event of mediation, either party shall have the right to commence a judicial
> proceeding; provided, however, that no such judicial proceeding shall be
> commenced until the mediation shall have been terminated and at least
> *Sixty (60)* days shall have elapsed from the date of the termination of the
> mediation. In all events, each party shall share equally the expenses of the **ADR**
> process.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

℗ All rights reserved.
*END 042*

**ENDORSEMENT#** *43*

This endorsement, effective *12:01 am*      *November 16, 2009*           forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 75010 | 02/00 | DO0200 ADMITTED - DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 75011 | 02/00 | DO0200 ADMITTED - POLICY |
|  | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| 75013 | 02/00 | APPENDIX B CRISISFUND |
| 90143 | 12/05 | CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 52133 | 03/07 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
| MNSCPT |  | OTHER INSURANCE AND INDEMNIFICATION CLAUSE AMENDED |
| MNSCPT |  | ORGANIZATIONAL CHANGES CLAUSE AMENDED |
| 90496 | 03/08 | EXCLUSION (M) AMENDED (FLSA) |
| 89371 | 05/05 | "NO LIABILITY" PROVISION DELETED (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS ARISING OUT OF A SECURITIES CLAIM) |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| MNSCPT |  | EXCLUSION (i) AMENDED |
| MNSCPT |  | CLAUSE 7 (a) AMENDED |
| 91490 | 08/06 | EXTRADITION COVERAGE |
| 94039 | 05/07 | STATE AMENDATORY INCONSISTENT |
| 94681 | 06/07 | SEVERABILITY OF EXCLUSIONS BROAD FORM CEO, CFO, & GC |
| 89386 | 03/07 | INVESTIGATION COSTS FOR DERIVATIVE DEMANDS |
| 83555 | 11/03 | OUTSIDE ENTITY EXECUTIVE (NO WRITTEN REQUEST) |
| 91712 | 06/07 | DOMESTIC PARTNER COVERAGE |
| MNSCPT |  | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (SHAREHOLDER CARVE-OUT) |
| MNSCPT |  | SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION |

*END 043*

78859 (10/01)                     Page 1 of 3

ENDORSEMENT# *43*

This endorsement, effective *12:01 am*     *November 16, 2009*          forms a part of
policy number   *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | SCIENTIFIC ADVISORY BOARD MEMBER EXTENSION |
| MNSCPT | | APPLICATION DEFINITION AMENDED 12 MONTHS BACK |
| 96342 | 10/07 | CLAIM DEFINITION - REQUESTS TO TOLL STATUTE OF LIMITATIONS |
| 96347 | 10/07 | CLAUSE 21 - DELETE MATERIALITY |
| 89353 | 05/05 | CRISISPLUS ENDORSEMENT |
| 98913 | 04/08 | CLAIM DEFINITION AMENDED - WELLS NOTICE |
| 96344 | 10/07 | SECURITIES CLAIM DEFINITION - COMMON LAW |
| 94189 | 03/07 | CONDUCT EXCLUSION FINAL ADJUDICATION |
| 96346 | 10/07 | INSURED V. INSURED EXCLUSION CREDITORS COMMITTEE REFERENCED AND WHISTLEBLOWER |
| 98916 | 04/08 | INSURED V. INSURED EXCLUSION AMENDED - 3 YEARS |
| 83549 | 11/03 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT WITH EXCEPTION FOR NON-INDEMNIFIABLE LOSS |
| 95282 | 08/07 | SECTION 11 OR 12 ENDORSEMENT |
| 99637 | 07/08 | SEVERABILITY OF THE APPLICATION ENDORSEMENT WITH ADVANCEMENT |
| 89370 | 05/05 | NEW POLICY ENDORSEMENT |
| MNSCPT | | CLAIM DEFINITION AMENDED - FOREIGN EXECUTIVE |
| MNSCPT | | CLAUSE 9 OF APPLICATION AMENDED |
| MNSCPT | | EXCLUSION (D) AMENDED |
| 97110 | 01/08 | E-DISCOVERY CONSULTANT SERVICES COVERAGE ENDORSEMENT |
| 98918 | 04/08 | POLLUTION EXCLUSION - BROAD FORM SECURITIES CLAIM EXCEPTION |
| 83553 | 11/03 | OUTSIDE ENTITY ENDORSEMENT (STANDARD) |
| 100990 | 02/09 | CANCELLATION PROVISION AMENDATORY (PRO RATA PREMIUM) |
| MNSCPT | | ADVANCEMENT OF LOSS ENDORSEMENT FINANCIAL INSOLVENCY |

*END 043*

**ENDORSEMENT#** *43*

This endorsement, effective *12:01 am      November 16, 2009*            forms a part of
policy number  *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PUNITIVE DAMAGE OTHER THAN EMPLOYMENT PRACTICES CLAIMS - CONDUCT EXCLUSION TRIGGER |
| 97889 | 04/08 | ALTERNATIVE DISPUTE RESOLUTION PROCESS CLAUSE AMENDATORY ENDORSEMENT |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 97886 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 043*

**POLICYHOLDER NOTICE**
**REGARDING**
**E- DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre- approved E- Consultant Firm from the E- DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E- Discovery is required or becomes necessary.

For the purpose of the E- Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)   "E- Consultant Firm" means any E- DISCOVERY CONSULTING FIRMS listed below. Any "E- Consultant Firm" may be hired by an Insured to perform E- Discovery Consultant Services without further approval by the Insurer.

(b)   "E- Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)   "E- Discovery Loss" means the reasonable and necessary consulting fees for the E- Discovery Consultant Services provided solely to the Insured(s) by an E- Consultant Firm.

Provided, however, E- Discovery Loss shall not include any costs of discovery other than E- Discovery Loss.

(d)   "E- Discovery Consultant Services" means solely the following services performed by an E- Consultant Firm:

1.   assisting the Insured with managing and minimizing the internal and external costs associated with E- Discovery;

2.   assisting the Insured in developing or formulating an E- Discovery strategy which shall include interviewing qualified and cost effective E- Discovery vendors;

3.   serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E- Discovery strategy; and

4.   such other services provided by the E- Consultant Firm that the Insured, Insurer and E- Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E- Discovery Loss arising from a Claim (with the exception of a Securities Claim) under the attached policy that is in excess of the applicable Retention amounts stated in Item 4 of the Declarations. The E- DISCOVERY CONSULTANT SERVICES COVERAGE provided for Securities Claims shall be governed by the terms, conditions and exclusions set forth in the attached policy. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E- DISCOVERY CONSULTING FIRMS

| | |
|---|---|
| Cliff Dutton, LLC<br>121 Benevolent Street<br>Providence, RI 02906<br>Contact: Cliff Dutton<br>Phone: 401- 383- 7172<br>E- Mail: cliff.dutton@cox.net | ACT Litigation Services, Inc.<br>27200 Tourney Road, Suite 450<br>Valencia, CA 91355<br>Contact: Macyl Burke<br>Phone: 661- 284- 6401 Ext 318<br>E- Mail: mburke@actlit.com |
| Encore Legal Solutions<br>5201 Great America Parkway, Suite 320<br>Santa Clara, CA 95054<br>Contact: Jim Ramsey<br>Phone: 925- 735- 7639<br>E- Mail: jramsey@encorelegal.com | Digital Mandate<br>68 South Service Road, Suite 100<br>Melville, NY 11747<br>Contact: Gregg Osinoff<br>Phone: 631- 577- 7944<br>E- Mail: gosinoff@digitalmandate.com |
| Protiviti<br>400 South Hope Street, Suite 900<br>Los Angeles, CA 90071<br>Contact: Frank Wu<br>Phone: 213- 327- 1509<br>E- Mail: frank.wu@protiviti.com | |

*National Union Fire Insurance Company of Pittsburgh, Pa.*
**CLAIM REPORTING INFORMATION SHEET**

Reporting Under Policy/Bond Number: *01-361-35-23*        Date: _____

Type of Coverage: *D00200* _____

Insured's Name, As Given On Policy Declarations (Face Page):

*SILICON STORAGE TECHNOLOGY, INC.* _____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

Case Or Claimant Name:

_____

_____

If The Party Involved Is Different From "Insured" Name (As Given On Policy Declarations)
State Relationship:_____

Insurance Broker/Agent: *MARSH RISK & INSURANCE SERVICES* _____

Address: *345 CALIFORNIA ST. SUITE 1300* _____
_ *SAN FRANCISCO, CA 94104* _____

_____

Contact: *Rachel Medak* _____

Phone:_____

Please Provide The Information Requested Above So That We May Expedite Our Service
To You.

Send Notice Of Claims To:   c- Claim for Financial Lines   Phone: (888) 602- 5246
                            Chartis Claims, Inc.           Fax:   (866) 227- 1750
                            175 Water Street               Email:  c- Claim@chartisinsurance.com
                            9th Floor
                            New York, NY 10038

*centralized Customer Link and Information Management*

**ENDORSEMENT# *44***

This endorsement, effective *12:01 am*    *April 8, 2010*         forms a part of
policy number  *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RUN- OFF ENDORSEMENT
(SELLER/BUYER MERGER)**

In consideration of the additional premium of $211,923, (which shall be fully earned at the
inception date of this endorsement) it is hereby  understood and agreed that as of the  time
and date designated as the effective time of the merger or acquisition (" **Effective Time**") in
the  merger  agreement  or  plan  of  merger  or  similarly  titled  contract  executed  by  and
between **SELLER, BUYER** and/ or **BUYER'S ACQUISITION COMPANY**, dated as of including
any amendments or revisions  thereto, (hereinafter the " **Merger Agreement**") the following
provisions shall apply and be added to the policy.

**I.**

Clause 1 of the policy is hereby deleted in its entirety and replaced by the following:

**1.  INSURING AGREEMENTS**

With respect to Coverage A, B  and C, solely with respect to  **Claims** first made against
an **Insured** during the **Policy  Period** or the **Discovery  Period** (if applicable) and  reported
to  the  **Insurer**  pursuant  to  the  terms  of  this  policy,  and  subject  to  the  other terms,
conditions and limitations of this policy, this policy affords the following coverage:

**COVERAGE A: EXECUTIVE LIABILITY INSURANCE**

This policy  shall  pay  the **Loss**  of  any  **Insured  Person** arising  from  a  **Claim** made
against such **Insured  Person** for any **Wrongful Act** of  such **Insured Person**  occurring
on or prior to the **Effective Time**, except when and to  the extent that an **Organization**
or the **BUYER** or the **BUYER'S ACQUISITION COMPANY** has indemnified such **Insured
Person**. Coverage A shall  not apply  to **Loss**  arising from a  **Claim** made  against an
**Outside Entity Executive**.

**COVERAGE B: ORGANIZATION INSURANCE**

*(i) Organization* Liability:  This policy  shall pay the **Loss** of any  **Organization,** or
in the event that the **Organization** no longer exists as a viable entity, the
**BUYER**  or  the  **BUYER'S  ACQUISITION  COMPANY**,  arising  from  a
**Securities Claim** made  against such  **Organization** for any  **Wrongful Act**
of such **Organization** occurring on or prior to the **Effective Time**.

**ENDORSEMENT# _44_   (Continued)**

This endorsement, effective _12:01 am      April 8, 2010_           forms a part of
policy number   _01-361-35-23_
issued to   _SILICON STORAGE TECHNOLOGY, INC._

by        _National Union Fire Insurance Company of Pittsburgh, Pa._

*(ii) Indemnification of an **Insured Person***: This policy shall pay the **Loss** of an **Organization**, or in the event that the **Organization** no longer exists as a viable entity, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**, arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person** occurring on or prior to the **Effective Time**, but only to the extent that such **Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY** has indemnified such **Insured Person.**

## COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** occurring on or prior to the **Effective Time**, but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY** has indemnified such **Outside Entity Executive.**

## COVERAGE D: CRISISFUNDSM INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization,** or in the event that the **Organization** no longer exists as a viable entity, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**, solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) but, in all events, occurring on or prior to the **Effective Time**, and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFundSM**, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

MNSCPT                          *END 44*

### ENDORSEMENT# 44   (Continued)

This endorsement, effective *12:01 am*     *April 8, 2010*        forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### II.

The Definitions (m) and (s) are hereby deleted in their entirety and replaced by the following:

(m) "**Indemnifiable Loss**" means **Loss** for which an **Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**, has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**.

(s) "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**, has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**.

### III.

It is further understood and agreed that Clause 8 of the policy, other than paragraph 5 of Clause 8, is hereby amended by deleting the term **Organization** wherever it appears and replacing it with the phrase, "**Organization**, the **BUYER** or the **BUYER'S ACQUISITION COMPANY**.

### IV.

Clause 10 of the policy, DISCOVERY CLAUSE, is deleted in its entirety and replaced by the following:

**10. DISCOVERY CLAUSE**

The **Named Entity** shall have the right to a period of six (6) years following the **Effective Time** ("**Discovery Period**") in which to give written notice to the **Insurer** of **Claims** first made against an **Insured(s)** during said six- year period for **Wrongful Act(s)** occurring on or prior to the **Effective Time** and otherwise covered by this policy.

MNSCPT                                    *END 44*

**ENDORSEMENT#** *44*   **(Continued)**

This endorsement, effective *12:01 am*   *April 8, 2010*   forms a part of
policy number   *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**V.**

Clause 11, CANCELLATION CLAUSE, is deleted in its entirety and replaced by the
following:

## 11. CANCELLATION CLAUSE

This policy may not be canceled, other than by or on behalf of the **Insurer** for
nonpayment of premium.  In the event of nonpayment of premium the **Insurer** may
cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**,
by registered, certified, or other first class mail, at the **Named Entity's** address as
shown in the Declarations, written notice stating when, not less than 15 days
thereafter, the cancellation shall be  effective. The mailing of such  notice as aforesaid
shall be sufficient proof  of notice. The **Policy Period** terminates  at the date  and hour
specified in such notice, or at the date and time of surrender.

If the period of limitation relating  to the giving of notice  is prohibited or made void by
any law controlling the construction thereof, such period shall be deemed to be
amended so as to be equal to the minimum period of limitation permitted by  such law.
It is further understood  and agreed that  the premium charged  for this policy and  this
endorsement shall be fully earned as of the **Effective Time**.

**VI.**

Clause 12(a) is deleted in its entirety.

**VII.**

Clause 13, SUBROGATION, is amended by adding the following at the end thereof:

In the event of  any payment under this  policy, **Insurer** shall  be specifically
subrogated  to the extent of such  payment to  all the **Organization's** and the
**Insured(s)'** rights of recovery thereof,  and the **Organization** and  the **Insured(s)** shall
execute all papers required and shall do everything that may be necessary to secure
such rights  including the execution  of  such documents  necessary to enable  the
**Insurer** to effectively bring suit in the name of the **Organization** and/or the **Insured(s)**
in any action against the  **BUYER** or the **BUYER'S  ACQUISITION COMPANY**,
including, but not limited  to, for  nonpayment of indemnity due  and owing to the
**Organization** and/or the **Insured(s)**.

MNSCPT   *END 44*

**ENDORSEMENT#** *44*   (Continued)

This endorsement, effective *12:01 am      April 8, 2010*              forms a part of
policy number  *01-361-35-23*
issued to   *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**VIII.**

It is further understood and agreed that notwithstanding  any other provision of this policy,
this policy shall not  provide coverage for  any **Claims** alleging a  **Wrongful Act**(s) occurring
after the **Effective Time.**

**IX.**

Solely for the purposes of this endorsement, the following definitions are hereby added:

" **BUYER**" means

" **BUYER'S ACQUISITION COMPANY**" means [not applicable].

ALL OTHER TERMS, CONDITIONS, AND LIMITATIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 44*

**ENDORSEMENT#** *45*

This endorsement, effective *12:01 am     November 16, 2009*                    forms a part of
policy number  *01-361-35-23*
issued to *SILICON STORAGE TECHNOLOGY, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | RUN-OFF ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 045*