# Exhibit B

**Policy Number:** ELU114684-09

**Renewal of Number** N/A

☐ **Greenwich Insurance Company**

☒ **XL Specialty Insurance Company**

Members of the XL America Companies

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

---

**EXCESS POLICY DECLARATIONS**

---

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

---

**Item 1.** **Name and Mailing Address of Insured Entity:**

Silicon Storage Technology, Inc.
1171 Sonora Court
Sunnyvale, CA  94086

---

**Item 2.** **Policy Period:** **From:** November 16, 2009 **To:** November 16, 2010

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

---

**Item 3.** **Limit of Liability:**

$10,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.** **Schedule of Underlying Insurance:**

| | | Insurer | Policy No | Limit of Liability |
|---|---|---|---|---|
| (a) | Primary Policy | National Insurance Fire Insurance Company of Pittsburgh, Pa. | 01-361-35-23 | $10,000,000 |
| (b) | Underlying Excess Policy | | | |

---

**Item 5.** **Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

---

**Item 6.** **Premium:**

Taxes, Surcharges or Fees: $0.00

Total Policy Premium: $104,000.00

---

**Item 7.** **Policy Forms and Endorsements Attached at Issuance:**

EX 71 01 09 99   EX 82 01 07 07   XL 80 24 03 03   EX 80 107 10 03   EX 80 75 09 02   EX 83 22 11 01
EX 80 222 08 08   EX 80 01 04 00   XL 80 38 02 05   EX 80 54 11 01

---

EX 70 00 11 01

# EXCESS POLICY DECLARATIONS

Countersigned: _____    By: _____
                        Date                           Authorized Representative

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**

## POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM
### INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived. Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **ELU114684-09**

---
Signature of Insured

---
Print Name and Title

---
Date

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT: REGULATORY
EXTON, PA 19341-0636
PHONE: 800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

John R. Glancy
President

Toni Ann Perkins
Secretary

LAD 400 XLS 09 09

©2009 X.L. America, Inc. All rights reserved. May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# PRIVACY POLICY

The XL America, Inc. insurance group ("We" or "Our Group"), respects the privacy of all personal information. Thus, the information We collect from our customers, or potential customers, is treated with the highest degree of privacy.

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws.

The term "personal information" includes all information we obtain about a customer and maintain in our files. All persons with access to personal information are required to follow this policy.

## Our Privacy Promise

Your privacy rights are important to us. Analysis of your private information allows us to provide to you excellent service and products. Your trust in us depends upon the security and integrity of our records. Thus, We promise to:

1) Follow strict security standards. This will protect any information you share with us, or that we receive about you.
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management. We will obtain only reputable references and services.
3) Collect and use the least amount of information necessary to:
   a. advise you and deliver excellent service and products; and
   b. conduct our business.
4) Train our employees to securely handle private information. We will only permit authorized employees to have access to such information.
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a. we disclose to you our intent to do so; or
   b. we are required to do so by law.
6) Not disclose medical information unless:
   a. you give us written consent to do so; or
   b. We disclose for any exception provided in the law.
7) Attempt to keep our records complete and exact.
8) Advise you how and where to access your account (unless prohibited by law).
9) Advise you how to correct errors or make changes to your account.
10) Inspect our procedures to ensure your privacy.

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services.

The information we collect comes from the following sources:
- **Submission** – In the application, you provide: your name; address; phone number; e-mail address; and other types of private information.
- **Quotes** – We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost.

The data we collect will vary with the type of insurance you seek.
- **Transactions** – We maintain records of all transactions with Our Group and our third party providers. Our records include:

1) your coverage choices;
2) premiums; billing; and payment records,
3) claims history; and
4) other data related to your account.

- **Claims** – We maintain records on any claims that are made under your policies. The investigation of a claim involves collection of a broad range of information. It also involves many issues, some of which do not directly involve you. We will share with you facts that we collect about your claim; unless prohibited by law. The process of claim investigation also involves advice; opinions; and comments from many people. These may include attorneys and experts. This will help us determine how best to handle your claim. To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you.

- **Credit and Financial Reports** – We may receive your credit history. This is to support information you provided during the submission and quote processes. This history will help to underwrite your coverage.

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods. If we become aware that any information may be incorrect, we will make reasonable effort to correct it.

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes. This is true unless such sharing is permitted by law. Information may be shared with a third party for necessary servicing of the product. It may also be disclosed for other business reasons as permitted by law.

We do not share personal data outside of Our Group for servicing or joint marketing reasons. We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party.

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group. "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc.); solvency, etc.

We also do not disclose outside of Our Group personal information for use in marketing. We may share information within Our Group regarding our experience and dealings with the customer.

We may disclose private information about a customer as allowed or otherwise required by law. The law allows us to share a customer's financial data within Our Group for marketing purposes. The law does not allow customers to limit or prevent such disclosures.

We may also disclose personal information about you or your business to:
- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;
- persons or groups that conduct scientific studies. This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order. This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation. This applies whether the transaction is proposed or complete;

- a professional peer review group. This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer. However, such consent shall not be prohibited, limited or sought for certain insurance functions. This includes, but is not limited to:

a. claims administration;
b. fraud prevention;
c. underwriting; policy placement or issuance; loss control or auditing.

## Access to Your Information

The following persons will have access to personal information we collect:
employees of Our Group and third party service providers. Information will only be collected as is needed in transactions with you.

## Violation of the Privacy Policy

Any person violating this Policy will be subject to discipline. This may include termination.

For questions regarding this privacy statement, please contact your broker.

# NOTICE TO POLICYHOLDERS

## IMPORTANT INFORMATION

## (California)

In the event you need to contact someone about this Policy for any reason please contact your agent. If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

XL Specialty Insurance Company
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040

1-800-688-1840

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

California Department of Insurance
Consumer Communications Bureau
300 South Spring Street, South Tower
Los Angeles, CA 90013

1-800-927-4357
213-897-8921 (if calling from within the Los Angeles area
1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

Endorsement No.: 1
Named Insured: Silicon Storage Technology, Inc.
Policy No.: ELU114684-09

Effective: November 16, 2009
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CHANGE OF INSURER ADDRESS AND PREAMBLE ENDORSEMENT

(1)     The Declarations of the Policy are amended as follows:

**Notices required to be given to the Insurer must be addressed to:**

**Notice to Claim Dept:**
XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept.

**All other Notices:**
XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All references in the policy to other addresses for Notice to the Insurer shall be deemed amended.

(2)     The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) and to the issuer(s) of the Underlying Insurance, and subject to all of the terms, conditions and endorsements of this Policy, the Insurer and the Insured Entity, on its own behalf and on behalf of all persons and entity(s) entitled to coverage hereunder, agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 2**
**Named Insured: Silicon Storage Technology, Inc.**
**Policy No.: ELU114684-09**

**Effective: November 16, 2009**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6 of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 3**
**Named Insured: Silicon Storage Technology, Inc.**
**Policy No.: ELU114684-09**

**Effective: November 16, 2009**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCESS TERRORISM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that any endorsement of the Underlying Insurance which specifically precludes coverage for an "insured loss" resulting from an "act of terrorism" (as such terms are defined in the Terrorism Risk Insurance Act of 2002) which would otherwise be provided coverage under the Underlying Insurance shall be inapplicable to this Policy (any such endorsement, a "Terrorism Endorsement"). Subject to all other terms, conditions and limitations of the Policy and the Underlying Insurance, other than the Terrorism Endorsement, coverage for acts of terrorism is included in this Policy. In any event, coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of loss by the applicable insurers thereunder, regardless of whether any such Terrorism Endorsement is included in any Underlying Insurance. The Insurer will not be liable under this Policy to any earlier degree than the Insurer would have had this Endorsement not been a part of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 4
Named Insured: Silicon Storage Technology, Inc.
Policy No.: ELU114684-09

Effective: November 16, 2009
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# EXCESS ENDORSEMENT

In consideration of the premium charged:

(1)    It is understood and agreed that the Limit of Liability for this Policy as set forth in Item 3 of the Declarations is the maximum amount payable, including Defense Expenses, by the Insurer under this Policy.  Any provision of the Underlying Insurance indicating any ability or right to any reinstatement of such policy's limit of liability shall be inapplicable to this Policy, including any provision indicating a reinstatement of such policy's limit of liability during any extended discovery or reporting period.  The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

(2)    It is understood and agreed that the Insurer is under no obligation to renew this Policy upon its expiration.  Any provision of the Underlying Insurance indicating any automatic renewal of this Policy shall be inapplicable to this Policy.   The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 5**
**Named Insured: Silicon Storage Technology, Inc.**
**Policy No.: ELU114684-09**

**Effective: November 16, 2009**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to November 11, 2000.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 6
Named Insured: Silicon Storage Technology, Inc.
Policy No.: ELU114684-09

Effective: November 16, 2009
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# PAYMENT OF LOSS ENDORSEMENT

In consideration of the premium charged:

(1)    Section I Insuring Agreement is amended to read in its entirety as follows:

    "I.    INSURING AGREEMENT

        The Insurer will provide the Insured with insurance coverage for claims first made against the Insured during the Policy Period excess of the Underlying Insurance stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the Primary Policy together with the terms, conditions, endorsements and warranties of any other Underlying Insurance. The coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of loss by the applicable insurers thereunder, by the Insured or by the insurer(s) of any A-side Excess Policy, as defined below, (the "A-side Insurer") and in no event will the coverage under this Policy be broader than the coverage under any Underlying Insurance."

(2)    Section III Depletion of Underlying Limits of Liability is amended to read in its entirety as follows:

    "III.    DEPLETION OF UNDERLYING LIMITS OF LIABILITY

        (A)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the Underlying Insurance, will continue to apply to loss as excess insurance remaining under such Underlying Insurance, in the event of the reduction or exhaustion of the limits of liability of the Underlying Insurance solely as the result of the actual payment of loss by the applicable insurer thereunder, by the Insured or by the A-side Insurer.

        (B)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the Underlying Insurance, will continue for subsequent claims or loss as primary insurance in the event of the exhaustion of all of the limits of liability of such Underlying Insurance solely as the result of the actual payment of loss by the applicable insurer thereunder, by the Insured or by the A-side Insurer.

        (C)    Any risk of uncollectibility with respect to the Underlying Insurance will be expressly retained by the Insured and will not be assumed by the Insurer.

        This Policy, subject to all its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the Underlying Insurance or for any other reason except for the actual payment of loss by the applicable Insurer thereunder, by the Insured or by the A-side Insurer."

(3)    Solely for the purposes of this endorsement, the term "A-Side Excess Policy" means the following policy(ies) scheduled below:

National Union Fire Insurance Company of Pittsburgh, Pa., Policy No. 01-361-35-23

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 7
Named Insured: Silicon Storage Technology, Inc.
Policy No.: ELU114684-09

Effective: November 16, 2009
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# FULLY-EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in ITEM 6 of the Declarations, shall be deemed to be fully earned as of the Policy Inception Date set forth in ITEM 2 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 8**
**Named Insured: Silicon Storage Technology, Inc.**
**Policy No.: ELU114684-09**

**Effective: November 16, 2009**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INCONSISTENCY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy modified by another endorsement attached to this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of the endorsement which are more favorable to the Insured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 9
Named Insured: Silicon Storage Technology, Inc.
Policy No.: ELU114684-09

Effective: November 16, 2009
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# DELETE POLICY TERMINATION CLAUSE

In consideration of the premium charged, Section VIII. Policy Termination is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# EXCESS POLICY COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) and to the issuer(s) of the Underlying Insurance, and subject to all of the terms, conditions and endorsements of this Policy, the Insurer and the Insured Entity, on its own behalf and on behalf of all persons and entity(s) entitled to coverage hereunder, agree as follows:**

## I.    INSURING AGREEMENT

The Insurer will provide the **Insured** with insurance coverage for claims first made against the **Insured** during the **Policy Period** excess of the **Underlying Insurance** stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the **Primary Policy** together with the terms, conditions, endorsements and warranties of any other **Underlying Insurance**. The coverage hereunder will attach only after all of the **Underlying Insurance** has been exhausted by the actual payment of loss by the applicable insurers thereunder and in no event will the coverage under this Policy be broader than the coverage under any **Underlying Insurance**.

## II.    DEFINITIONS

(A)    "**Insured**" means, either in the singular or plural, those persons or organizations designated as insureds in the **Underlying Insurance**.

(B)    "**Policy Period**" means the period designated in ITEM 2 of the Declarations, or to any earlier cancellation date.

(C)    "**Primary Policy**" means the policy designated in ITEM 4 (A) of the Declarations.

(D)    "**Underlying Insurance**" means all policy(s) designated in ITEM 4 of the Declarations.

## III.    DEPLETION OF UNDERLYING LIMITS OF LIABILITY

(A)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue to apply to loss as excess insurance remaining under such **Underlying Insurance**, in the event of the reduction or exhaustion of the limits of liability of the **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(B)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue for subsequent claims or loss as primary insurance in the event of the exhaustion of all of the limits of liability of such **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(C)    Any risk of uncollectibility with respect to the **Underlying Insurance** will be expressly retained by the **Insured** and will not be assumed by the **Insurer**.

This Policy, subject to all its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the **Underlying Insurance** or for any other reason except for the actual payment of loss by the applicable Insurer thereunder.

## IV.  MAINTENANCE OF UNDERLYING INSURANCE

(A)  The limit(s) of liability of the **Underlying Insurance** designated in ITEM 4 of the Declarations shall be maintained during the Policy Period in full effect except for any reduction or exhaustion of the aggregate limits of liability available under the **Underlying Insurance** solely by reason of actual payment of loss thereunder. Failure to comply with the foregoing will not invalidate this Policy but the Insurer will not be liable to a greater extent than if this condition had been complied with. If for any reason the **Underlying Insurance** is not maintained, then the **Insured** will be deemed to be self-insured for that amount of the limit(s) of liability of such **Underlying Insurance.**

(B)  In the event of a change of any kind to any **Underlying Insurance** by endorsement, rewrite or otherwise, the coverage under this Policy will become subject to such change only if and to the extent that the Insurer consents to such change by written endorsement to this Policy.

(C)  The Insurer will not be liable under this Policy earlier or to any greater extent than it would have been as a result of the actual or alleged failure by the **Insureds** to give notice or to exercise any extensions under any **Underlying Insurance,** or misrepresentation or breach of warranty with respect to any **Underlying Insurance.**

## V.  CLAIM PARTICIPATION

The Insurer may, at its sole discretion, elect to participate in the investigation, settlement and/or defense of any claim against the **Insured** even if the **Underlying Insurance** has not been exhausted and the **Insured** will provide such information and cooperation as is reasonably requested.

## VI.  LIMIT OF LIABILITY

The amount stated in ITEM 3 of the Declarations is the limit of liability of the Insurer and shall be the maximum amount payable, including Defense Expenses, by the Insurer under this Policy. Defense Expenses are part of and not in addition to the limit of liability and the payment of such will reduce the limit of liability.

## VII.  NOTICE

The **Insured** will, as a condition precedent to the coverage available under this Policy, give written notice as soon as practicable to the Insurer of:

(A)  any claim under any **Underlying Insurance,** or any situation that is required to be reported under any **Underlying Insurance** that could give rise to a claim under any **Underlying Insurance;**

(B)  the cancellation of any **Underlying Insurance;**

(C)  any change to the **Underlying Insurance** by rewrite, endorsement or otherwise; or

(D)  any additional or return premiums charged or allowed in connection with any **Underlying Insurance.**

The Insured Entity will be the sole agent for and will act on behalf, of the **Insured** with respect to all matters under this Policy, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notice of cancellation of this Policy, paying premium and receipt of any return premiums.

Notice given to any underlying insurer of any claim or any situation that could give rise to a claim under any **Underlying Insurance** scheduled in ITEM 4 of the Declarations will not be deemed notice to the Insurer. Notice of any claim or situation that could give rise to a claim must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

## VIII.     POLICY TERMINATION

(A)     The **Insured Entity** may cancel this Policy by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations.

(B)     The Insurer will refund the unearned premium computed at the customary short rate if the Policy is canceled by the **Insured Entity**. Under all other circumstances, any unearned premium will be computed pro rata.

(C)     This Policy will terminate immediately upon the termination of any of the policies scheduled in ITEM 4 of the Declarations, whether canceled by the **Insured Entity** or the applicable insurer. Notice of cancellation or non-renewal of any such policies duly given by any of the applicable insurers shall serve as notice of the cancellation or non-renewal of this Policy by the Insurer.

## IX.     ALTERATION

No change in or modification of this Policy shall be effective unless made by endorsement signed by an authorized employee of the Insurer.

Endorsement No.: 10
Named Insured: Silicon Storage Technology, Inc.
Policy No.: ELU114684-09

Effective: April 08, 2010
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CONVERT TO RUN-OFF ENDORSEMENT

In consideration of the additional premium of $130,000.00 charged (the "Run-off Premium"):

(1)     The amount of unearned premium for the Original Policy Period, as defined below, is 63,232.00.

(2)     Item 2 of the Declarations is amended to read in its entirety as follows:

     "Item 2. Policy Period: From: November 16, 2009     To: April 08, 2016
     At 12:01 AM Standard Time at your Mailing Address Shown Above."

(3)     Item 6 of the Declarations is amended to read in its entirety as follows:

     "Item 6. Premium:

| | |
|---|---|
| Original Premium | $104,000.00 |
| Run-off Premium | $130,000.00 |
| Unearned Premium | $63,232.00 |
| Taxes, Surcharges or Fees | $0.00 |
| Total Policy Premium | $170,768.00 |

(4)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period, as amended in paragraph (2) above.

(5)     No coverage will be available under this Policy for any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty or wrongful act committed or allegedly committed on or after April 08, 2010.

(6)     Solely for the purposes of this endorsement, the term Original Policy Period means the period of time from November 16, 2009 to November 16, 2010.

(7)     The Policy shall not be cancelable by either the Insured or the Insurer, regardless of Section VIII Policy Termination of the Policy. The entire premium for this Policy shall be deemed to be fully earned as of April 08, 2010, and Section VIII Policy Termination shall be deemed amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 10**
**Named Insured: Silicon Storage Technology, Inc.**
**Policy No.: ELU114684-09**

**Effective: April 08, 2010**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CONVERT TO RUN-OFF ENDORSEMENT

In consideration of the additional premium of $130,000.00 charged (the "Run-off Premium"):

(1)     The amount of unearned premium for the Original Policy Period, as defined below, is 63,232.00.

(2)     Item 2 of the Declarations is amended to read in its entirety as follows:

"Item 2. Policy Period: From: November 16, 2009        To: April 08, 2016
At 12:01 AM Standard Time at your Mailing Address Shown Above."

(3)     Item 6 of the Declarations is amended to read in its entirety as follows:

"Item 6. Premium:
| | |
|---|---|
| Original Premium | $104,000.00 |
| Run-off Premium | $130,000.00 — march |
| Unearned Premium | $63,232.00 |
| Taxes, Surcharges or Fees | $0.00 |
| Total Policy Premium | $170,768.00 |

(4)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period, as amended in paragraph (2) above.

(5)     No coverage will be available under this Policy for any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty or wrongful act committed or allegedly committed on or after April 08, 2010.

(6)     Solely for the purposes of this endorsement, the term Original Policy Period means the period of time from November 16, 2009 to November 16, 2010.

(7)     The Policy shall not be cancelable by either the Insured or the Insurer, regardless of Section VIII Policy Termination of the Policy.  The entire premium for this Policy shall be deemed to be fully earned as of April 08, 2010, and Section VIII Policy Termination shall be deemed amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.