1  DAVID B. GOODWIN (Bar No. 104469)
2  Email:  dgoodwin@cov.com
   MICHAEL S. GREENBERG (Bar No. 99727)
3  Email:  mgreenberg@cov.com
   ELIZABETH S. PEHRSON (Bar No. 197302)
4  Email:  epehrson@cov.com
   COVINGTON & BURLING LLP
5  One Front Street
   San Francisco, California  94111-5356
6  Telephone: + 1 (415) 591-6000
7  Facsimile: + 1 (415) 591-6091

8
   JO DALE CAROTHERS (Bar No. 228703)
9  Email: jcarothers@weintraub.com
   WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
10 LAW CORPORATION
11 11682 El Camino Real, Suite 100
   San Diego, California 92130
12 Telephone: + 1 (858) 436-8152
13 Facsimile: + 1 (858) 436-3890

14 Attorneys for Plaintiff
15 SILICON STORAGE TECHNOLOGY, INC.

16              UNITED STATES DISTRICT COURT

17         FOR THE NORTHERN DISTRICT OF CALIFORNIA

18 SILICON STORAGE TECHNOLOGY, INC.,          Civil Case No.:  5:13-CV-05658-LHK
19        Plaintiff,
                                              **SILICON STORAGE TECHNOLOGY,**
20      v.                                    **INC.'S OPPOSITION TO**
                                              **DEFENDANTS' MOTION TO**
21 NATIONAL UNION FIRE INSURANCE              **COMPEL RE MEDIATION AND**
22 COMPANY OF PITTSBURGH, PA., and XL         **JOINT DEFENSE PRIVILEGES**
   SPECIALTY INSURANCE COMPANY,
23                                            Before the Honorable Paul S. Grewal
        Defendants.                           Date: June 9, 2015
24                                            Time: 10:00 a.m.
25                                            Place:  Courtroom 5 - 4th Floor

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     RELEVANT BACKGROUND ........................................................................... 4

III.    ARGUMENT ..................................................................................................... 5

A.      The Mediation Privilege Protects The Communications The Insurers Seek ...................... 5

B.      The California Mediation Privilege Applies In This Diversity Case ................................. 9

C.      The Mediation Privilege Extends To Communications Both Before And At Least 10
        Days After the Mediation And Was Not Waived Here .................................................... 12

D.      The Insurers Have No Due Process Rights to the Protected Mediation Communications 13

E.      The Common Interest Doctrine ..................................................................................... 15

F.      An In Camera Inspection is Not Proper ........................................................................ 17

        H.      No Basis Exists For A Continuance Of The Fact Discovery Cutoff .................... 18

IV.     CONCLUSION ................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amis v. Greenberg Traurig LLP*,
235 Cal. App. 4th 331 (2015) ...................................................................14

*Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*,
299 F.R.D. 638 (E.D. Cal. 2014) ..............................................................16

*Cassel v. Superior Court*,
51 Cal. 4th 113 (2011) ..................................................................... *passim*

*Chavez v. PVH Corp.*,
2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ...............................1, 9, 10

*Doublevision Entm't, LLC v. Navigators Spec. Ins. Co.*,
2015 U.S. Dist. LEXIS 10425 (N.D. Cal. Jan. 28, 2015) .......................10

*Eisendrath v. Superior Court*,
109 Cal. App. 4th 351 (2003) ..............................................................8, 13

*Fehr v. Kennedy*,
387 Fed. Appx. 789 (9th Cir. 2010)...........................................................10

*Foxgate Homeowners' Ass'n v. Bramalea Cal., Inc.*,
26 Cal. 4th 1 (2001) ..............................................................................6, 13

*Goerner v. Axis Reinsurance Co.*,
400 Fed. Appx. 226 (9th Cir. 2010)...........................................................10

*Haskins v. Employers Ins. of Wausau*,
2015 U.S. Dist. LEXIS 10645 (N.D. Cal. Jan. 28, 2015) .......................10

*Houck Const., Inc. v. Zurich Specialties London Ltd.*,
2007 WL 1739711 (C.D. Cal. June 4, 2007) ..............................................8

*Integrated Global Concepts, Inc. v. j2Global, Inc.*,
No. 5:12-cv-03434-RMW (PSG)...............................................................15

*Kurtin v. Elieff*,
215 Cal. App. 4th 455 (2013) ...................................................................13

*Lord Abbett Mun. Inc. Fund, Inc. v. Asami*,
2013 U.S. Dist. LEXIS 147830 (N.D. Cal. 2013) ....................................16

ii

*McCoy v. Health Net, Inc.*,
   No. 03-cv-1801 (FSH) (MH) (D.N.J. Mar. 26, 2015) ..........................................................10

*Meza v. H. Muehlstein & Co.*,
   176 Cal. App. 4th 969 (2009) ......................................................................................15

*Olam v. Congress Mortg. Co.*,
   68 F. Supp. 2d 1110 (N.D. Cal. 1999) ..........................................................................10

*Pecover v. Elec. Arts Inc.*,
   2011 U.S. Dist. LEXIS 138926 (N.D. Cal. Dec. 2, 2011)...................................................16

*Rael v. Davis*,
   166 Cal. App. 4th 1608 (2008) .......................................................................................1

*Rojas v. Superior Court*,
   33 Cal. 4th 407 (2004) ...............................................................................................12

*Ryan v. Garcia*,
   27 Cal. App. 4th 1006 (1994) ......................................................................................17

*Simmons v. Ghaderi*,
   44 Cal. 4th 570 (2008) ..........................................................................................5, 6, 7

*State Nat'l Ins. Co. v. Khatri*,
   2014 U.S. Dist. LEXIS 64549 (N.D. Cal. May 9, 2014) ....................................................10

*Thought, Inc. v. Oracle Corp.*,
   No. 12-cv-05601-WHO (MEJ) (N.D. Cal. 2014) ...............................................................16

*Travelers Cas. & Sur. Co. v. Superior Court*,
   126 Cal. App. 4th 1131 (2005) .......................................................................................8

*United States v. Am. Tel. and Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) ...................................................................................16

*United States v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003).............................................................................15, 16

*United States v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010) ....................................................................................16

*United States v. Gonzalez*,
   669 F.3d 974 (9th Cir. 2012) ......................................................................................17

*Wimsatt v. Superior Court*,
   152 Cal. App. 4th 137 (2007) ........................................................................2, 6, 12, 14

**Statutes**

Cal. Evid. Code §§ 1115 *et seq.* ........................................................................1, 11

Cal. Evid. Code, §1119(b) ...................................................................................5, 6

Cal. Evid. Code § 1119 *et seq.* .............................................................................10

*Cal. Evid. Code*, § 1125(a)(5) ................................................................................7

Cal. Evid. Code § 1126 ...........................................................................................5

California Evidence Code Section 1119 ..............................................8, 10, 11, 12

California Evidence Code Section 1122(a)(1) ...................................................7, 13

**Other Authorities**

California Evidence Code ..........................................................................................7

California Law Revision Commission comments ....................................................8

Federal Rule of Evidence 408 ........................................................................1, 9, 11

Federal Rule of Evidence 501 ...........................................................................9, 11

Local Rule 6-12(a)(2) .............................................................................................18

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL RE MEDIATION AND JOINT DEFENSE PRIVILEGE

## I.   INTRODUCTION

The Insurers seek an order compelling SST to produce documents that are protected by California's mediation confidentiality statute.  The Insurers start by arguing that Federal Rule of Evidence 408 applies in this diversity action to the admissibility of mediation communications, rather than California's mediation privilege, Cal. Evid. Code §§ 1115 *et seq*.  But the Insurers fail to cite a single case so holding.  They cite one decision contrary to their argument – but it is from 1999, which would suggest to the unwary reader that the issue is up in the air and that no decision in the subsequent 16 years has addressed the Insurers' argument.

The Insurers never mention the score of federal decisions applying the California mediation privilege in diversity actions, including the Ninth Circuit, a case from the District of New Jersey earlier this year in which the two lead lawyers for the Insurers here were counsel for insurers seeking (unsuccessfully) to pierce the mediation privilege, and, perhaps most pertinently, the ruling on this very issue by Judge Koh, to whom this case is assigned.  As Judge Koh held just six months ago, in rejecting the same argument the Insurers make here:

> The Court finds that "state law supplies the rule of decision" because both the instant action and the *Scott-George/Wiggs* action implicate only state causes of action.  As such, under Federal Rule of Evidence 501, the Court applies California law as to the scope of the mediation privilege (cites omitted).

*Chavez v. PVH Corp.*, 2014 WL 6617142 at *6 n.4 (N.D. Cal. Nov. 20, 2014).  Put bluntly, the Insurers did not have a good faith basis for making this argument.

The Insurers' second argument is that even if the California mediation privilege does apply here (which it absolutely does), they are nonetheless entitled to confidential mediation documents under a "due process" exception.  But once again they fail to cite a single case supporting their position.  In fact, because "there are no exceptions to mediation confidentiality, other than those provided by statute" (*Rael v. Davis,* 166 Cal. App. 4th 1608, 1622 (2008)), the Insurers' own cited cases reflect that a due process exception to the California mediation privilege has only been applied when a party's fundamental interest in the *constitutional* right to confrontation in criminal proceedings is at stake.  The Insurers do not contend that the present

1

insurance coverage action implicates such a constitutional right, and the California Supreme Court has explained that "the mere loss of evidence [resulting from the application of the mediation confidentiality statutes] pertinent to the prosecution of a lawsuit for civil damages does not implicate such a fundamental interest." *Cassel v. Superior Court,* 51 Cal. 4th 113, 135 (2011); *accord Wimsatt v. Superior Court,* 152 Cal. App. 4th 137, 163 (2007).  Thus, the Insurers had no reasonable basis for making this argument either.

The Insurers' third argument as to the mediation privilege is that SST has not sufficiently supported its claim.  Setting aside the obvious point that SST had no obligation to submit anything other than a privilege log up to this time – and that the privilege log itself is the document that memorializes a party's objections to the production of privileged documents – SST is submitting the Declarations of Jo Dale Carothers and David Goodwin, which set forth facts demonstrating that the documents as to which SST objects on the basis of the mediation privilege are indeed protected by the privilege.[1]

No doubt the Insurers are frustrated that they cannot obtain or use documents protected by California's privileges, but that does not provide a legal basis for ignoring established California law.  As the California Supreme Court stated:  "the [mediation] statutes' terms must govern, even though they may compromise petitioner's ability to prove his claim . . . ."  *Cassel*, 51 Cal. 4th at 119.  The Insurers simply refuse to acknowledge the breadth of and seriousness

---

[1]     After receiving the Insurers' motion, SST carefully reviewed the two lists of documents for which the Insurers challenge the privilege claims on SST's 277-page privilege log.  (ECF #74-1, Ex. 2.)  SST discovered that, as with large scale productions such as the one here, documents were included that should not have been logged.  For example, SST included in the privilege log a letter that it had produced to the Insurers (Goodwin Decl., ¶ 3), and a number of documents that are privileged but are not actually related to this case (Carothers Decl., ¶ 11). SST will inform the Insurers in advance of the hearing on this motion of any documents for which it is withdrawing its objections.  At the same time, the Insurers acknowledged that they had mistakenly represented in their moving papers that no written joint defense agreements exist between SST and its former employees Yeh and Levi; they now concede that SST had produced three joint defense agreements to the Insurers.  (ECF #94; *see* Carothers Decl., Exs. A-C.)

2

with which California courts, and federal courts applying California's mediation protections, treat mediation confidentiality.  It is broad, it is close to absolute, it applies to communications before, during, and ten days after the mediation, and it is not subject to exceptions other than those statutorily granted, such as by consent of all participants to the mediation.  *Id.* at 124 ("the mediation confidentiality statutes must be applied in strict accordance with their plain terms").  Because no such exception applies here, the Insurers' motion to compel production of mediation-related documents must fail.

The Insurers also challenge SST's assertion of the joint defense/common interest privilege with respect to certain documents.  Here too they cite no case even remotely pertinent to the issue here.  Instead, they merely suggest that SST, Bing Yeh and Amitay Levi might not have shared a common legal interest in defending the underlying litigation.  The undisputed record is to the contrary.  All three were co-defendants in trade secret litigation in which they were being charged with misappropriation and use of alleged trade secrets.  Moreover, SST had an indemnity agreement with the two individual defendants under which it was required to pay for their defense and for indemnity had they not settled and instead lost the case.  (Carothers Decl., ¶¶ 5, 10.)  They also entered into written joint defense agreements that, contrary to the Insurers' statements in their moving papers (corrected in ECF# 94, filed May 29, 2015), were produced to the Insurers here.  Of course, they shared a common legal interest in defending the case.  Thus, SST and the two individual defendants properly shared privileged material to further their common interests without waiving their privileges and work product protection.

Finally, the Insurers move for the fourth time for an extension of the fact discovery deadline.  The Court should deny that demand as well.  Judge Koh denied the Insurers' first motion to extend the fact discovery deadline, finding that the Insurers "have not been diligent in pursuing discovery" in this case.  ECF #66, at 1.  And, on May 28, 2015, Judge Koh issued another order (ECF #88) reaffirming the existing discovery cutoff date, and refusing to continue the next case management conference: "Because the case must progress expeditiously before

the June 4, 2015 fact discovery cutoff, and the Court does not want to introduce delay, Defendant's motion is DENIED."

The Court should deny the Insurers' motion to compel in its entirety.

## II.    RELEVANT BACKGROUND

In this action, SST seeks insurance coverage from its two D&O Insurers, National Union and XL, for the cost of settling the "Trade Secret Action," a Santa Clara County Superior Court lawsuit that Xicor filed against SST and two former SST employees. (ECF #1, ¶2.)  In that Action, Xicor alleged that two of its former employees had taken trade secrets with them when they joined SST, and sought damages for the alleged use of such secrets while at SST. (*Id.* ¶¶ 22-27.)  SST and the two employees denied the allegations, including that the purported trade secrets were trade secrets.  SST was obligated by agreement to indemnify and hold harmless the two individual defendants for the claims against them in the Trade Secret Action. (*Id.* ¶ 29.)

In March and April 2011, shortly after the filing of the Trade Secret Action, the parties exchanged correspondence regarding mediation. (Carothers Decl., ¶ 7.)  However, the formal mediation session that was planned did not take place then, and instead was delayed until August 15, 2012, when the parties held a formal mediation in San Francisco before Anthony Piazza. (*Id.*)  There were a number of mediation-related communications between counsel for SST and counsel of Xicor, as well as between SST and the Insurers, leading up to the mediation session, and there were additional such communications after the mediation session.  The documents listed in paragraph 9 to the Carothers Declaration and paragraph 4 to the Goodwin Declaration were mediation communications that would not have existed but for the mediation. SST accepted Xicor's settlement demand on August 24, 2012 and signed a formal settlement agreement a week later. (Goodwin Decl., ¶ 2; ECF #26, at 3.)  Along the way, the parties exchanged mediation communications that ultimately resulted in the settlement. (*Id.*)

While not directly relevant to their motion, the Insurers assert that SST did not provide the Insurers an opportunity to be involved in the August 2012 mediation and settlement of the Trade Secret Action.  On the contrary, National Union actually attended a portion of the

4

mediation, and XL was invited to attend but chose instead to have a representative available by phone. (ECF #81-3, ¶¶ 5-6.) Moreover, before SST agreed to the ultimate settlement demand, SST sought the Insurers' input and agreement to waive any "consent to settlement" defenses to coverage. (ECF #81-2, ¶ 2.) The Insurers declined to pay any portion of the Trade Secret Action settlement but agreed that they would not assert as a defense to coverage that SST lacked their consent to enter into the settlement. (ECF #26, at 3-4; ECF #81-2, ¶ 2.)

The dispute over SST's assertion of the mediation privilege first arose during the case management conference on July 9, 2014. (*See* ECF No. 38.) Judge Koh instructed that the scope of the mediation privilege should be brought before Magistrate Judge Grewal. (*Id.*) SST raised the mediation privilege as an objection to the Insurers' document production requests in SST's responses to those requests, served in December 2014. (*E.g.,* ECF #69, Ex. 1.) And SST provided its final privilege log to the Insurers in March 2015. (ECF #74-1, Ex. 2.) Yet, consistent with Judge Koh's recent finding that the Insurers have not been diligent in discovery, the Insurers waited until just three weeks before the close of fact discovery to raise the issue with this Court.

## III.   ARGUMENT

### A.   The Mediation Privilege Protects The Communications The Insurers Seek

The documents and communications the Insurers seek fall directly within the mediation privilege. California's broad mediation privilege provides that "[n]o writing . . . that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery" (Cal. Evid. Code, §1119(b)), and that "[a]ll communications, negotiations, or settlement discussions . . . in the course of a mediation or mediation consultation shall remain confidential." *Id.*, §1119(c). Such mediation communications and writings remain "inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends." Cal. Evid. Code § 1126; *see Simmons v. Ghaderi*, 44 Cal. 4th 570, 580 (2008).

This statutory protection reflects overwhelming public policy concerns: "promot[ing] a candid and informal exchange" that can be "achieved only if the participants know that what is

5

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS'        5:13-cv-05658-LHK
MOTION TO COMPEL RE MEDIATION AND JOINT DEFENSE PRIVILEGE

said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes." *Foxgate Homeowners' Ass'n v. Bramalea Cal., Inc.*, 26 Cal. 4th 1, 14 (2001) (internal quotation marks and citation omitted); *see also Cassel*, 51 Cal. 4th at 124 ("[t]he purpose of these provisions is to encourage the mediation of disputes by eliminating a concern that things said or written in connection with such a proceeding will later be used against a participant."). Thus, the mediation confidentiality statutes "are designed to provide maximum protection for the privacy of communications in the mediation context." *Cassel*, 51 Cal. 4th at 132.

To provide such protection, mediation confidentiality is not limited to just communications made in the course of mediation. Rather, communications and writings made for "the purpose of, in the course of, or pursuant to, a mediation or mediation consultation" are not admissible or subject to discovery. Cal. Evid. Code, §1119(b); *see also Cassel*, 51 Cal. 4th at 128 ("It follows that, absent an express statutory exception, all discussions conducted in preparation for a mediation, as well as all mediation-related communications that take place during the mediation itself, are protected from disclosure.").

The Insurers' efforts to find a loophole allowing them to use confidential mediation documents runs counter to the California Supreme Court's rulings. The California Supreme Court has "repeatedly said that these [mediation] confidentiality provisions are clear and absolute." *Cassel*, 51 Cal. 4th at 117. The California Supreme "Court has repeatedly resisted attempts to narrow the scope of mediation confidentiality." *Wimsatt*, 152 Cal. App. 4th at 152. Instead, that "Court has held that the mediation statutes are to be broadly construed to effectuate the legislative intent, even if there are conflicting public policies and even if the equities in a particular case suggest a contrary result." *Id.* at 142.

For example, in *Foxgate Homeowners Assn.*, the California Supreme Court held that even sanctionable conduct occurring during a mediation is confidential and, therefore, may not be disclosed for the purpose of seeking sanctions. 26 Cal. 4th at 15-17. Similarly, in *Simmons v. Ghaderi*, the Court held that the doctrines of implied waiver and estoppel do not apply to

6

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL RE MEDIATION AND JOINT DEFENSE PRIVILEGE                    5:13-cv-05658-LHK

mediation confidentiality and that disclosure is limited to the narrow exceptions set forth in the mediation confidentiality statutes. 44 Cal. 4th 584-588. In *Cassel*, the Court held that the attorneys' mediation-related discussions with their client were confidential and, therefore, were neither discoverable nor admissible for purposes of proving claims of legal malpractice "even though [that would] compromise the petitioner's ability to prove his claim of legal malpractice." 51 Cal. 4th at 119. As these decisions reflect, the California mediation privilege is close to absolute in a civil case, even where the evidence might be highly relevant and useful in that case or in a later case.

As to the scope of the privilege, the California Evidence Code provides that a "mediation" consists not just of (a) communications "made for the purpose of, in the course of, or pursuant to a mediation" or a "mediation consultation" (i.e., pre-mediation communications "for the purpose of initiating, considering, or reconvening a mediation, or retaining the mediator"), but also (b) communications during any period within 10 days after a mediation unless the parties agree in writing to terminate the mediation and (c) any subsequent communication with the mediator if there is an agreement of the parties to continue the mediation process. *See Cal. Evid. Code*, § 1125(a)(5) ("a mediation ends when . . . [f]or 10 calendar days, there is no communication between the mediator and any of the parties . . . [but] the parties may shorten or extend this time by agreement").

The mediation confidentiality provisions "unqualifiedly bar disclosure of certain communications and writings produced in mediation absent an express statutory exception." *Simmons*, 44 Cal. 4th at 583. The only express statutory exception even potentially relevant here is set forth in California Evidence Code Section 1122(a)(1), which provides that a communication or writing that is made or prepared "for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation" is not protected from disclosure if "[a]ll persons who conduct or otherwise participate in the mediation expressly agree in writing, or orally in accordance with Section 1118, to disclosure of the communication, document, or writing." Therefore, pursuant to Section 1122(a)(1), unless all participants in the mediation

7

expressly agreed to the disclosure of a mediation communication or writing, mediation confidentiality remains intact. *See Cassel*, 51 Cal. 4th at 133 ("To assure this maximum privacy protection, the Legislature has specified that all mediation participants involved in a mediation-related communication must agree to its disclosure.").

The California Law Revision Commission comments following Section 1122 make clear that the phrase "persons who conduct or otherwise participate in the mediation" is to be construed broadly: "Subdivision (a)(1) states the general rule that mediation documents and communications may be admitted or disclosed only upon agreement of all participants, including not only parties but also the mediator and other nonparties attending the mediation (e.g., a disputant not involved in litigation, a spouse, an accountant, an insurance representative, or an employee of a corporate affiliate)." Cal. Law Revision Com. com., foll. § 1122 (emphasis added). The California Supreme Court has likewise interpreted the Commission's comments regarding "participants" broadly. "The list provided by the Commission is, by its terms, not all-inclusive (note the 'e.g.' preceding the examples given), and no reason appears why other persons attending and assisting in the mediation on behalf of the disputants, such as their counsel, are not themselves distinct 'participants' who must agree to the disclosure of confidential mediation-related communications they made or received." *Cassel*, 51 Cal. 4th at 131; *see also Eisendrath v. Superior Court*, 109 Cal. App. 4th 351, 359 (2003) (finding that the phrase "all persons" in Section 1122 includes not only parties but also the mediator and other nonparties attending the mediation); *Travelers Cas. & Sur. Co. v. Superior Court*, 126 Cal. App. 4th 1131, 1146 n. 18 (2005) (finding that the mediation confidentiality statutes "were intended to apply to participants, not just parties, including insurance company representatives"); *Houck Const., Inc. v. Zurich Specialties London Ltd.*, 2007 WL 1739711, at *2 (C.D. Cal. June 4, 2007) (holding that California Evidence Code Section 1119 encompasses communications between an insurer and its insured). Thus, any mediation communications with the parties to the mediation or their counsel would fall within the privilege.

Unhappy with the scope of the mediation confidentiality statute, the Insurers argue that

(1) the California mediation privilege does not apply in this diversity case even where the underlying action occurred in California state court and California provides the rule of decision for the coverage dispute before this federal court, (2) some of the privileged communications are not sufficiently tied to a mediation to be protected, and (3) not producing these communications violates their "due process" rights.  We discuss each argument in turn.

### B.    The California Mediation Privilege Applies In This Diversity Case

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  The Insurers acknowledge that this is a diversity action, in which California law governs, but argue that California's mediation confidentiality statute does not apply in this case.  As noted above, however, Judge Koh very recently rejected the same argument in *Chavez v. PVH Corp.*, 2014 WL 6617142 at *6.

*Chavez* concerned a motion to intervene in a class action for purposes of objecting to a proposed settlement.  The proposed intervenor submitted confidential mediation documents from the mediation, so Judge Koh had to address whether such materials were properly submitted.  The defendants in the case objected to the disclosure, arguing that California's mediation privilege governed, while the intervenor argued instead that Federal Rule of Evidence 408 applied and under that rule the materials would be admissible.  *Id*. at *6-7.  Rejecting the intervenor's argument, Judge Koh held that the California mediation privilege applied and barred disclosure:

> The Court finds that "state law supplies the rule of decision" because both the instant action and the Scott-George/Wiggs action implicate only state law action causes of action.  As such, under Federal Rule of Evidence 501, the Court applies California law as to the scope of the mediation privilege (cites omitted).  Under California law, any oral or written communication made "for the purpose of, or in the course of, or pursuant to, a mediation or mediation consultation," is privileged and therefore inadmissible unless it falls within a statutory exception.  (cites omitted).  Proposed intervenors fail to identify an applicable statutory exception, and the Court concludes that none would apply here.  The Court therefore disregards Proposed

9

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS'                                    5:13-cv-05658-LHK
MOTION TO COMPEL RE MEDIATION AND JOINT DEFENSE PRIVILEGE

Intervenors' improper disclosures of the actual contents of
Defendant PVH Corporations written mediation statements.

*Id.* at *6, n.4.

Judge Koh got it exactly right and myriad federal courts have come to the same conclusion, including the Ninth Circuit. *See Goerner v. Axis Reinsurance Co.*, 400 Fed. Appx. 226 (9th Cir. 2010) (admission of a mediation brief from the underlying lawsuit was error under Cal. Evid. Code § 1119); *see also Fehr v. Kennedy*, 387 Fed. Appx. 789 (9th Cir. 2010) (in diversity action commenced in federal court for legal malpractice, Ninth Circuit affirmed District Court order excluding evidence of attorney malpractice during mediation based upon Oregon's mediation confidentiality statute).

SST cannot find (and the Insurers have not cited) a single case that held to the contrary. In contrast, SST has listed twenty federal cases applying the mediation privilege in Appendix A. Among those are *Doublevision Entm't, LLC v. Navigators Spec. Ins. Co.*, 2015 U.S. Dist. LEXIS 10425, at*4 (N.D. Cal. Jan. 28, 2015) (applying Cal. Evid. Code § 1119 *et seq.* because "[s]tate privilege law governs when a federal court exercises diversity jurisdiction over the parties' claims for relief."); *Haskins v. Employers Ins. of Wausau*, 2015 U.S. Dist. LEXIS 10645, at *7 fn. 1 (N.D. Cal. Jan. 28, 2015) (applying Cal. Evid. Code § 1119 *et seq.* because "[a]s this action is before the court based on diversity jurisdiction, questions regarding the application of privileges are governed by California law."); *State Nat'l Ins. Co. v. Khatri*, 2014 U.S. Dist. LEXIS 64549 at *23 (N.D. Cal. May 9, 2014) (same, applying Cal. Evid. Code § 1119 and finding that "the facts, circumstances, and terms of the . . . mediation . . . are privileged"); *McCoy v. Health Net, Inc.*, No. 03-cv-1801 (FSH) (MH) (D.N.J. Mar. 26, 2015) (rejecting argument by same lead counsel representing the Insurers in this case that the California mediation privilege would not apply); *Olam v. Congress Mortg. Co.* 68 F. Supp. 2d 1110, 1124-1125 (N.D. Cal. 1999) (state "mediator's privilege" and its exceptions apply in litigation to enforce settlement agreement "when state substantive law is the source of the rule of decision on the claim to which the proffered evidence from the mediation is relevant").

The Insurers cite *Milhouse v. Travelers Commer. Ins.* Co., 982 F. Supp. 2d 1088, 1105 fn.

10 (C.D. Cal. 2013), where the court, in *dictum* in a footnote, merely raised the question of whether Rule 408 or the California mediation privilege would govern when they are in conflict. However, that court then said that "the question need not be resolved here." *Id.* But that question *was* resolved in a score of other cases – at least eight of which were decided after *Milhouse* – all holding that the California mediation privilege applies in a diversity case where state law provides the rule of decision, as is the case here. *See* cases cited in Appendix A.

The Insurers also suggest that the California mediation privilege is not actually a privilege, so Rule 501 does not apply. Once again, myriad courts disagree, as they have applied Rule 501 to the mediation privilege. Indeed, the only case the Insurers cite for this argument is *Cassel*, and only because the Court referred to Section 1119 as a "mediation confidentiality," rather than calling it a privilege. Not only was *Cassel* not addressing whether Federal Rule of Evidence 501 incorporates the California mediation privilege into a diversity action – as noted, every federal court that addressed that issue found it does – *Cassel* used that terminology to demonstrate that the waiver exceptions to the attorney-client privilege do not apply to the mediation privilege because the California legislature actually intended for the "mediation confidentiality" to be even *more* protective. *Cassel*, 51 Cal. 4th at 132-133 ("The mediation confidentiality statutes govern only the narrow category of mediation-related communications, but they apply broadly within that category, and are designed to provide maximum protection for the privacy of communications in the mediation context….To assure this maximum privacy protection, the Legislature has specified that all mediation participants involved in a mediation-related communication must agree to its disclosure."). And at least seven published California Court of Appeal decisions since *Cassel* have referred to the "mediation privilege." *See* cases cited in Exhibit B.

There can be no question that California Evidence Code §§1115 *et. seq.* applies in this diversity action.

C.    **The Mediation Privilege Extends To Communications Both Before And At Least 10 Days After the Mediation And Was Not Waived Here**

California law provides that "all discussions conducted in preparation for a mediation" are protected from disclosure. *Cassel*, 51 Cal. 4th at 128.  In an another attempt to pierce the privilege, the Insurers also seek to compel production of e-mails and other communications leading up to the August 15, 2012 mediation, including communications between SST and Xicor and communications between SST and National Union.  But California's mediation privilege applies to all communications pursuant to a mediation, regardless of who specifically is involved.  *See Cassel*, 51 Cal. 4th at 128 (protected "communications include those between a mediation disputant and his or her own counsel, even if these do not occur in the presence of the mediator or other disputants"); *Wimsatt*, 152 Cal. App. 4th at 160 (holding that e-mails transmitted before the second mediation are subject to the mediation privilege).  In light of this and other similar authority, it is not surprising that the Insurers have cited no case holding that to be protected by the mediation privilege, the communications have to be during actual mediation sessions, or include the mediator.

The period before a mediation is often when the most sensitive documents, such as mediation briefs or statements of positions are exchanged.  To hold the mediation privilege inapplicable to documents exchanged in advance of mediations would thwart the purpose of the mediation privilege.  *Rojas v. Superior Court*, 33 Cal. 4th 407, 416-417 (2004) (rejecting Court of Appeal's holding that "derivative material" prepared in connection with a mediation may be discoverable, as such a rule would be "inconsistent with the overall purpose of the mediation confidentiality provisions").  That is why the mediation privilege is focused on the purpose of the communications:  whether they are made "for the purpose of, in the course of, or pursuant to, a mediation."  Cal. Evid. Code, §1119; see *Wimsatt*, 152 Cal. App. 4th at 160 ("Mediation confidentiality is to be applied where the writing, or statement would not have existed but for a mediation communication, negotiation, or settlement discussion.").  Therefore, the communications made leading up to the August 15, 2012 mediation also are protected and cannot be disclosed.  This includes the identified communications from June, July, and August

12

2012.  Similarly, communications in March and April 2011 concerning the mediation the parties had planned then, but which was not formally held at that time and was re-scheduled for August 2012, are also privileged and cannot be disclosed.  Carothers Decl., ¶ 7.

The Insurers assert that, in a comment at the July 9, 2014 status conference, counsel for SST "waived" the mediation privilege for communications occurring in the 10-day period after the August 15, 2012 mediation.  However, SST's counsel was referring to an on-the-record settlement demand letter that was provided to the Insurers at the time and produced in this litigation; to the extent those comments encompassed more than the specific settlement demand letter that was sent outside the mediation process, which led to the Court including in an order that documents during such period are not protected, counsel misspoke.  Goodwin Decl., ¶ 4.  In fact, counsel could not have properly waived the mediation privilege at the case management conference.  Because not all of the those who participated in the mediation agreed to a waiver, and because there is no waiver in writing, any oral statement at the status conference would not satisfy California Evidence Code Section 1122(a)(1) and, therefore, would be ineffective. Accordingly, all conduct, communications and writings relating to the mediation remain protected from disclosure, including such conduct, communications and writings occurring up to ten days after the August 15, 2012 mediation.  *Cassel*, 51 Cal. 4th at 128.

### D.    The Insurers Have No Due Process Rights to the Protected Mediation Communications

Attempting to circumvent the broad mediation privilege, the Insurers argue that they have a due process right to SST's protected mediation communications.  However, the California Supreme Court has confirmed that "there are no exceptions to the confidentiality of mediation communications."  *Foxgate*, 26 Cal. 4th at 4.  Accordingly, courts have consistently refused to find waiver of the mediation privilege, even in cases where "due process" concerns have far greater weight than anything the Insurers could possibly raise here.  See *id.* at 17-18 (privilege precluded evidence for a motion for sanctions that an attorney was obstructing the mediation process); *Kurtin v. Elieff*, 215 Cal. App. 4th 455, 475-476 (2013) (refusing to create a "due process" exception to the mediation privilege); *Eisendrath v. Superior Court*, 109 Cal. App. 4th

13

351 (2003) (mediation privilege could not be pierced to show litigant's subsequent statements inconsistent with those made in mediation).

As the California Supreme Court has explained, the "application of the mediation confidentiality statutes to [civil damages] actions does not implicate due process concerns so fundamental that they might warrant an exception on constitutional grounds." *Cassel*, 51 Cal. 4th at 135. Thus, the "mere loss of evidence pertinent to the prosecution of a lawsuit for civil damages" does not warrant the repeal of or creating an exception to the mediation privilege; indeed, the protection of such evidence is the very purpose of the privilege. *Id.* As one California Court of Appeal put it:

> The Supreme Court has repeatedly resisted attempts to narrow the scope of mediation confidentiality. The court has refused to judicially create exceptions to the statutory scheme, even in situations where justice seems to call for a different result. Rather, the Supreme Court has broadly applied the mediation confidentiality statutes and has severely curtailed courts' ability to formulate exceptions. The court has stated that "[t]o carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme ... unqualifiedly bars disclosure of communications [and writings] made during mediation absent an express statutory exception."

*Wimsatt*, 152 Cal. App. 4th at 152 (quoting *Foxgate*, 26 Cal. 4th at 15).

The Insurers cite to an inapposite district court decision in which the trial judge held that the plaintiffs had waived their argument that the court erroneously admitted their mediation statements by failing to object at trial or, alternatively, that the court would have admitted the statements. *Milhouse* , 982 F. Supp. 2d at 1105-1106. The plaintiffs in that case argued that Travelers acted in bad faith by unreasonably failing to settle with the plaintiffs for their fire loss, and made misleading statements about Travelers' settlement efforts. *Id.* at 1106-1107. The court held that admission of the mediation statements was proper to show that the parties did not settle because the plaintiffs "demanded way too much money to settle their claim." *Id.* at 1108.

*Milhouse* is probably not good law, as a subsequent California Court of Appeal decision, *Amis v. Greenberg Traurig LLP*, 235 Cal. App. 4th 331, 333, 339-40 (2015), "acknowledge[d]

14

our Supreme Court's near categorical prohibition against judicially crafted exceptions to the mediation confidentiality statutes" and held that a client could not introduce evidence of his attorneys' conduct in connection with a mediation to support a legal malpractice claim, or even attempt to draw inferences from that conduct.  In any event, in the present case, in contrast to *Milhouse*, where Travelers wanted to admit evidence of its own mediation conduct to rebut the plaintiffs' misleading arguments about Travelers' settlement conduct toward its insureds, the Insurers here have no remotely similar argument as to why due process demands that they access the mediation communications of their insured.  Even if there were a waiver doctrine, there has been no waiver here as already discussed.  It is only the Insurers who continue to seek to pry into privileged communications, but their attempts to do so over SST's objection cannot create a "waiver" by SST.

There is no "due process" exception to the California mediation privilege in this case.

### E.    The Common Interest Doctrine

The Insurers also argue that they are entitled to production of documents exchanged between counsel for SST and the lawyers representing two former SST employees who were defendants in the Trade Secret Action:  Bing Yeh and Amitay Levi.  The Insurers contend that the "common interest" doctrine does not apply to those communications.

The common interest doctrine is not a privilege in and of itself.  Instead, it is an exception to the rule on waiver where communications are disclosed to third parties.  As this Court explained, the doctrine "applies 'where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege' . . . ."  *Integrated Global Concepts, Inc. v. j2Global, Inc.*, No. 5:12-cv-03434-RMW (PSG); *see United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege"); *see also Meza v. H. Muehlstein & Co.*, 176 Cal. App. 4th 969, 981 (2009) ("the common interest doctrine is more appropriately characterized . . . as a nonwaiver doctrine, analyzed under standard waiver principles applicable to the attorney-client privilege and the

15

work product doctrine"). The common interest doctrine provides that disclosure to a third party does not waive work product protection where the third party shares a common interest with the disclosing party that is adverse to that of another party. *Bergonzi*, 216 F.R.D. at 495.

In the work product context, the common interest exception is not limited only to co-parties. *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1298-99 (D.C. Cir. 1980); *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO (MEJ) (N.D. Cal. 2014) ("where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege") (citation omitted). The shared interest can either be financial or commercial in nature. *Pecover v. Elec. Arts Inc.*, 2011 U.S. Dist. LEXIS 138926, *6-7 (N.D. Cal. Dec. 2, 2011); *see also United States v. Deloitte LLP*, 610 F.3d 129, 141 (D.C. Cir. 2010) (finding no waiver where the disclosing party had "a reasonable basis for believing that the recipient would keep the disclosed material confidential"). In other words, "[t]he great weight of authority holds that disclosure of work product to individuals who share a common interest with the disclosing party does not constitute waiver." *See Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.,* 299 F.R.D. 638, 646 (E.D. Cal. 2014) (listing cases).

The Insurers rely on *Lord Abbett Mun. Inc. Fund, Inc. v. Asami*, 2013 U.S. Dist. LEXIS 147830 (N.D. Cal. 2013), to argue that the common interest doctrine is narrowly tailored and only applicable to very specific issues. However, *Lord Abbett* involved the assertion of the common interest doctrine in the context of the attorney-client privilege, not the work-product doctrine. *See Cal. Sportfishing Prot. Alliance*, 299 F.R.D. at 647 (distinguishing *Lord Abbett*). Accordingly, *Lord Abbett* is not on point as it concerned the more narrowly tailored common interest exception to the attorney client privilege, rather than to the sharing of work product among co-defendants, at issue here.

It is undisputed that SST, Yeh, and Levi were all co-defendants in the Trade Secret Action, and all were accused of trade secret misappropriation of the alleged Xicor trade secrets. SST agreed to indemnify Yeh and Levi, and signed joint defense agreements with each. (ECF

#94; Carothers Decl., ¶¶ 5, 10 & Exs. A-C.[2] They all had a common interest in defending against the Trade Secret Action as each was a defendant, and SST was funding the defense of all.  Carothers Decl., ¶ 5.  The communications that were the subject of the objection were not disclosed to adverse parties.  *Id.*, ¶. 10.  Thus, a common interest existed between SST, Yeh, and Levi as to the defense of the Trade Secret Action, and it existed as an exception to the work product doctrine for issues relating to the defense of the Trade Secret Action.  The common interest doctrine, as an exception to the waiver of the work-product doctrine, thus protects their communications and protects them from disclosure here.

### F.    An In Camera Inspection is Not Proper

The Insurers also seek, in the alternative, an order requesting SST provide the documents subject to California mediation privilege for an *in camera* inspection.  However, again, the Insurers provide no authority in support of their position that such an inspection would be appropriate in this case.  The law is clear: a judge does not need to know and should not know or consider the contents of mediation statements when determining whether those statements are protected by mediation confidentiality and, if so, whether that protection has been waived.  *See, e.g., Ryan v. Garcia*, 27 Cal. App. 4th 1006, 1009-10 (1994) ("Judicial sifting of statements made at a confidential mediation to select those which can be used as evidence . . . contravenes the legislative intent underlying adoption of [the confidentiality provisions].");  *see also* N.D.

---

[2]      The Insurers based this argument in large part on the mistaken assumption that no joint defense agreements exist between SST and its former employees Bing Yeh and Amitay Levi. The day this opposition brief was due, counsel for National Union acknowledged that the assumption was, in fact, a mistake and that SST had produced joint defense agreements to the Insurers. (ECF #94.) That pleading implies, however, that no common interest can exist because SST signed separate agreements with Yeh and Levi (and with Yeh's company, Greenliant). But as the Ninth Circuit has explained: "[I]t is clear that no written agreement is required, and that a JDA may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012); *see* Carothers Decl., ¶¶ 5, 10.

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS'                    5:13-cv-05658-LHK
MOTION TO COMPEL RE MEDIATION AND JOINT DEFENSE PRIVILEGE

Cal. ADR Local Rule 6-12(a)(2) ("[A]ll counsel and parties shall treat as 'confidential information' the contents of the written Mediation Statements. . . . 'Confidential information' shall not be . . . [d]isclosed to the assigned judge. . . .").

The Court therefore should deny the Insurers' request for alternative relief.  In the event the Court concludes that factual questions exist regarding whether the mediation privilege applies to particular communications, the proper remedy would be to require a further privilege log, not to order the disclosure of privileged communications to either the Insurers or for an *in camera* inspection.

### H.   No Basis Exists For A Continuance Of The Fact Discovery Cutoff

At the close of their motion, the Insurers again demand an extension of the discovery cutoff.  Rather than brief the issue for the fifth time (between this Court and briefing before Judge Koh), SST respectfully refers the Court to ECF #63, #84, #85, #89.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should deny in its entirety the Insurers' motion to compel.

Dated:  May 29, 2015                              Respectfully submitted,


By:    /s/ David B. Goodwin
      David B. Goodwin
      Attorneys for Plaintiff
      SILICON STORAGE
      TECHNOLOGY, INC.

## APPENDIX A

Federal decisions acknowledging the California mediation privilege:

1. *Goerner v. Axis Reinsurance Co.*, 400 Fed. Appx. 226 (9th Cir. 2010)

2. *Kasperzyk v. Shetler Security Services, Inc.*, 2015 WL 1348503 (N.D. Cal. 2015)

3. *Pacific Marine Center, Inc. v. Philadelphia Indem. Ins. Co.*, 2015 WL 1565362 (E.D. Cal. 2015)

4. *Haskins v. Employers Insurance of Wausau*, 2015 WL 369983 (N.D. Cal. 2015)

5. *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2015 WL 2265900 (N.D. Cal. 2015)

6. *McCoy v. Health Net, Inc.*, No. 03-cv-1801 (FSH) (MH) (D. N.J. Mar. 26, 2015) (copy enclosed)

7. *Doublevision Ent., LLC v. Navigators Specialty Ins. Co.*, 2015 WL 370111 (N.D. Cal. 2015)

8. *Chavez v. PVH Corp.*, 2014 WL 6617142 (N.D. Cal. 2014)

9. *Gonzales v. T-Mobile, USA, Inc.*, 2014 WL 4055365 (S.D. Cal. 2014)

10. *State Nat'l Ins. Co. v. Khatri*, 2014 U.S. Dist. LEXIS 64549 (N.D. Cal. 2014)

11. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2013 WL 6326707 (N.D. Cal. 2013)

12. *Cornell University v. Illumina, Inc.*, 2013 WL 3216087 (D. Del. 2013)

13. *Blodgett v. Allstate Ins. Co.*, 2012 WL 2377031 (E.D. Cal. 2012)

14. *Benesch v. Green*, 2009 WL 4885215 (N.D. Cal. 2009)

15. *Evanston Ins. Co. v. Preferred Properties, LLC,* No. S 08-993 FCD GGH (E.D. Cal. Sep. 9, 2008) (copy enclosed)

16. *Houck Const., Inc. v. Zurich Specialties London Ltd*, 2007 WL 1739711 (C.D. Cal. 2007)

17. *Orlando v. Carolina Cas. Ins. Co.*, 2007 WL 781598 (E.D. Cal. 2007)

18. *Johnson v. America Online, Inc.*, 280 F. Supp. 2d 1018 (N.D. Cal. 2003)

19. *Gonzalez v. Valenzuela*, 2002 WL 34700599 (C.D. Cal. 2002)

20. *Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110 (N.D. Cal. 1999)

# APPENDIX B

California decisions acknowledging the California mediation privilege or confidentiality subsequent to *Cassel v. Superior Court*, 51 Cal. 4th 113 (2011):

1. *Amis v. Greenberg Traurig LLP*, 235 Cal. App. 4th 331, 339-40 (2015)

2. *Bower v. Inter-Con Security Systems, Inc.*, 232 Cal. App. 4th 1035, 1045 n. 1 (2014)

3. *Lappe v. Superior Court*, 232 Cal. App. 4th 774, 782-83 (2014)

4. *In re Marriage of Woolsey*, 220 Cal. App. 4th 881, 901 (2013)

5. *Kurtin v. Elieff*, 215 Cal. App. 4th 455, 475-76 (2013)

6. *Provost v. Regents of University of Cal.*, 201 Cal. App. 4th 1289, 1303-04 (2011)

7. *In re Marriage of Davenport*, 194 Cal. App. 4th 1507, 1522 (2011)

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL RE MEDIATION AND JOINT DEFENSE PRIVILEGE

5:13-cv-05658-LHK