UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SILICON STORAGE TECHNOLOGY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONAL UNION FIRE INSURANCE CO. ) <br> OF PITTSBURGH, PA., et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 5:13-cv-05658-LHK <br><br> **ORDER GRANTING-IN-PART MOTIONS TO COMPEL** <br><br> **(Re: Docket Nos. 68, 74)** |

Defendant National Union Fire Insurance Co. moves to compel Plaintiff Silicon Storage Technology, Inc. to respond further to National Union's first set of requests for production by producing amended written responses, withheld responsive documents and an index detailing SST's production thus far. National Union also moves for an extension of the discovery deadline. National Union's motions to compel are GRANTED-IN-PART. Its request to extend the discovery deadline is DENIED.

**I.**

SST purchased insurance policies from National Union and Defendant XL Specialty

Insurance Co. that covered liability for claims arising from SST employees' wrongful acts.[1] Only SST employees are insured under the policy, although SST itself is covered to the extent it indemnifies its employees.[2]

In 2011, Xicor, LLC sued SST and two SST employees, Bing Yeh and Amitay Levi, for misappropriation of trade secrets.[3] Separate and apart from the trade secret litigation, Xicor and SST were entwined in a patent infringement suit.[4] At the same time, SST's parent—Microchip Technology Inc.—had instituted a patent action against Xicor's parent—Intersil Corp.—before the International Trade Commission.[5] Following mediation, SST, Yeh, Levi and Xicor settled the trade secret action.[6] Soon after, SST, Xicor, Microchip and Intersil settled their respective patent suits with a single cross-licensing agreement.[7]

SST brought this suit after National Union and XL refused to cover the settlement payment on the grounds that some portion of the payment was consideration for settling the patent infringement suits, which fall outside the coverage of SST's insurance policy.[8]

**II.**

This court has jurisdiction under 28 U.S.C. § 1332. The undersigned was assigned discovery matters in this case pursuant to Fed. R. Civ. P. 72(a).

---

[1] *See* Docket No. 1 at ¶ 8.

[2] *See id.* at ¶¶ 9-10.

[3] *See id.* at ¶ 2.

[4] *See* Docket No. 81-3 at ¶ 2.

[5] *See id.* at ¶ 3.

[6] *See* Docket No. 1 at ¶¶ 30-32.

[7] *See* Docket No. 81-3 at ¶ 7.

[8] *See* Docket No. 1 at ¶ 34; Docket No. 15 at ¶¶ 48-49.

**III.**

National Union is entitled to relief, but not nearly the full scope of the relief that it seeks.

***First***, National Union is not entitled to amended responses and further production responsive to RFP Nos. 43, 47-48, 50, 56-61 and 72. Through this subset of RFPs, National Union sought information it claims is necessary to assess the value of the cross-licensing agreements that settled the previous patent actions.[9] SST objected to each RFP as overbroad, but agreed to produce any responsive documents exchanged in discovery during the previous patent actions.[10] National Union now argues SST improperly limited the scope of its production in response to National Union's RFPs relating to SST and Microchip's previous patent actions.[11]

Fed. R. Civ. P. 26(b) enables parties to obtain discovery on "any non-privileged matter that is relevant to any party's claim or defense." While Rule 26(b) is liberally interpreted, courts may limit discovery when it is "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit."[12]

Here, National Union's RFPs are indeed overbroad and unduly burdensome; most of the RFPs seek "any and all" documents or communications "referring or relating" to broad subjects including all products accused of infringing any of 12 patents[13] and all SST communications about the licensing of any of 12 patents.[14] Even National Union's RFPs for specific types of documents are overbroad. For example, while National Union attempts to frame RFP No. 72 as seeking

---

[9] *See* Docket No. 68 at 7.

[10] *See* Docket No. 68-4 at 28-29, 32-34, 38-41, 47.

[11] *See* Docket No. 68 at 6-8.

[12] Fed. R. Civ. P. 26(b)(2)(C).

[13] *See id.* at 32-33.

[14] *See id.* at 40.

3
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

presentations to SST investors and potential investors about SST's patent rights,[15] the RFP encompasses all presentations to investors or potential investors regardless of subject matter.[16]

Moreover, SST has already produced over one million pages of documents exchanged during the previous patent actions.[17] The parties to those actions considered the exchanged documents a sufficient basis for negotiating and entering into their settlement agreements.[18] For National Union's stated purpose—assessing the value of the settlement agreements—the previously exchanged documents would appear to be adequate. Rather than point to any specific document or category of documents SST has withheld, National Union speculates that some relevant information may not have been exchanged in the prior litigation.[19] Mere speculation cannot justify the added expense of such discovery.

All that being said, RFP No. 71 is a different story altogether. It seeks information about SST and its employees unrelated to the previous patent actions: "[a]ny and all DOCUMENTS that identify the number of shares and/or options of Silicon Storage Technology, Inc. or Microchip Technology, Inc. stock owned, exercised, or sold each year for LEVI and YEH by YOU."[20]

As an initial matter, the information National Union seeks is clearly relevant. Whether SST or its employees earned a profit from misappropriating trade secrets could affect the estimated liability or the scope of SST's insurance coverage.[21] Moreover, none of SST's objections are

---

[15] *See* Docket No. 68 at 7 ("Request No. 72 related to information provided to investors or potential investors concerning the value of SST's patent rights.").

[16] *See* Docket No. 68-4 at 47 ("Any and all DOCUMENTS referring or relating to presentations to investors or potential investors in Silicon Storage Technology, Inc. stock").

[17] *See* Docket No. 68-1 at ¶ 7.

[18] *See* Docket No. 81-3 at ¶¶ 7-9.

[19] *See* Docket No. 68 at 7-8 ([B]ut SST has given National Union no reason to believe that *all* of the requested information was exchanged by the parties in the underlying cases.").

[20] *See* Docket No. 68-4 at 46.

[21] *See* Docket No. 15 at ¶ 52.

4
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

persuasive; they are merely boilerplate assertions that the RFP is irrelevant, vague and overbroad.[22] Each term of RFP No. 71 has a clear meaning or is defined, and that the RFP is limited to two discreet employees' stock interests in only two companies shows that the RFP is narrowly drawn.[23] SST cannot argue that any resulting production will be unduly burdensome. It must produce any document responsive to RFP No. 71, subject to valid privilege objections, if any.

*Second,* National Union is not entitled to production of certain documents that were properly withheld under California's mediation privilege. California's mediation privilege statute provides "[n]o writing . . . that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery."[24] Fed. R. Evid. 501 provides "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rules of decision." This case is a diversity action governed by California law.[25] As such, the court applies California's law as to the scope of the mediation privilege.[26]

Fed. R. Evid. 408 provides more limited protections for mediation communications than California's privilege, allowing statements and documents made during mediation for some purposes.[27] National Union suggests using Rule 501 as a vehicle to apply California's mediation privilege necessarily conflicts with Rule 408. But courts in the Ninth Circuit consistently apply California's mediation privilege through Rule 501 in diversity actions.[28] To advocate breaking

---

[22] *See* Docket No. 68-4 at 46.

[23] *See id.*; Docket No. 68 at 2 n.1, 5 n.6.

[24] Cal. Evid. Code § 1119(b).

[25] *See* Docket No. 1 at ¶ 6.

[26] Communications that fall under this privilege remain confidential even after mediation ends. *See* Cal. Evid. Code § 1126.

[27] *See* Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.").

[28] *See Goerner v. Axis Reinsurance Co.*, 400 Fed. Appx. 226, 228 (9th Cir. 2010) (treating admission of a mediation brief as error under Cal. Evid. Code § 1119); *Doublevision Entm't, LLC*

5
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

with circuit precedent, National Union cites to dictum in a footnote of *Milhouse v. Travelers Commercial Ins. Co.* that raises the question of whether California's mediation privilege might conflict with Rule 408.[29]  The *Milhouse* court, however, explicitly declined to answer that question,[30] and numerous courts since *Milhouse* have continued to apply California's mediation privilege through the lens of Rule 501.[31]  Ultimately, precedent overwhelmingly shows that Rule 408 functions as a floor for mediation protections in federal court rather than as a bar precluding application of more protective state mediation statutes.[32]

National Union also argues that a due process exception to California's mediation privilege entitles it to discover SST's mediation communications because those communications are important to National Union's defense. But California's mediation protections are not so easily circumvented. California's legislature intended to encourage "candid disclosures and assessments" during mediation by providing "maximum protection for the privacy of communications in the mediation context."[33]  The California Supreme Court "has refused to judicially create exceptions to

---

*v. Navigators Spec. Ins. Co.*, Case No. 14-cv-02848, 2015 U.S. Dist. LEXIS 10425, at *4-10 (N.D. Cal. Jan. 28, 2015) (applying Cal. Evid. Code § 1119 *et seq.* to determine the scope of mediation privilege in a diversity action); *Haskins v. Employers Ins. of Wausau*, Case No. 14-cv-01671, 2015 U.S. Dist. LEXIS 10645, at *7-11 (N.D. Cal. Jan. 28, 2015) (same); *Chavez v. PVH Corp.*, Case No. 13-cv-01797, 2014 WL 6617142, at *6 n.4 (N.D. Cal. Nov. 20, 2014) (same); *State Nat'l Ins. Co. v. Khatri*, Case No. 13-cv-00433, 2014 U.S. Dist. LEXIS 64549, at *19-23 (N.D. Cal. May 9, 2014) (same).

[29] *See* 982 F.Supp.2d 1088, 1105 n.10 (C.D. Cal. 2013).

[30] *See id.* ("The Milhouses' untimely objection presents a seemingly rare, but serious tension between the dictates of Federal Rule of Evidence 408 and Rule 501. . . . [T]he question need not be resolved here").

[31] *See Goerner*, 400 Fed. Appx. at 228; *Doublevision Entm't, LLC*, 2015 U.S. Dist. LEXIS 10425, at *4-10; *Haskins*, 2015 U.S. Dist. LEXIS 10645, at *7-11; *Chavez*, 2014 WL 6617142, at *6 n.4; *State Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 64549, at *19-23.

[32] The Insurers also argue Rule 501 does not support application of California's mediation protections because the statutes creating those protections are not in the division of the California Evidence Code that governs privilege. The many courts applying California mediation protections through Rule 501 demonstrate that the formalist criterion of statute placement does not control what constitutes a privilege within the scope of Rule 501. *See id.*

[33] *Cassel v. Superior Court*, 51 Cal. 4th 113, 132-33 (2011).

6
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

the statutory scheme, even in situations where justice seems to call for a different result."[34] At the heart of this refusal to deviate from the statutory scheme "is the premise that the mere loss of evidence pertinent to the prosecution of a lawsuit for civil damages does not implicate such a fundamental interest" to warrant such an exception.[35] While the court is sympathetic to National Union's defense-related concerns about settlement negotiations during mediation, National Union's desire to bolster its defense in a civil suit does not justify a due process exception to California's mediation privilege.

National Union's reliance on *Milhouse* to support an extension of this due process exception is unpersuasive. In *Milhouse*, the plaintiffs accused the defendant of acting in bad faith during mediation.[36] The court held that due process entitled the defendant to admit evidence of its own conduct during the mediation to rebut the plaintiffs' accusations.[37] The *Milhouse* court's holding appears to be in conflict with the California Supreme Court's decision in *Cassel* that loss of evidence relevant to a civil suit never implicates interests sufficient to trigger the due process exception to California's mediation privilege.[38] *Milhouse* also is distinguishable from the present case. Unlike the defendant in *Milhouse*, National Union seeks to discover another party's mediation statements rather than to admit evidence of its own conduct. The *Milhouse* rule that allows a defendant to admit its own mediation statements at trial may not discourage candid mediation discussion because parties retain control over disclosure of their own statements. The same cannot be said of a rule that allows defendants to discover other parties' mediation

---

[34] *Wimsatt v. Superior Court*, 61 Cal. Rptr. 3d 200, 210 (2007).

[35] *Cassel*, 51 Cal. 4th at 135 (2011).

[36] *See Milhouse*, 982 F.Supp.2d at 1106.

[37] *See id.* at 1106-08.

[38] *See* 51 Cal. 4th at 1095 ("[A]pplication of the mediation confidentiality statutes to legal malpractice actions does not implicate due process concerns so fundamental that they might warrant an exception on constitutional grounds. . . . [T]he mere loss of evidence pertinent to the prosecution of a lawsuit for civil damages does not implicate such a fundamental interest.").

7
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

statements. Parties that believe their statements can be discovered by others and potentially used against them in future civil suits are far less likely to speak openly during mediation. The undersigned's own experience certainly suggests that the last thing we need in mediation is less candor. National Union's proposed extension of the due process exception would directly contradict the mediation privilege's purpose of facilitating candid discussion.[39] Here, SST properly withheld communications and documents falling within California's mediation privilege.[40]

***Third***, it was proper for SST to withhold production of communications between SST's attorneys and its employees' attorneys based on the joint defense privilege.[41] The joint defense privilege is an exception to the general rule that disclosure of communications to third parties waives privilege protections.[42] It applies to communications between parties that "have in common an interest in securing legal advice related to the same matter" when the communication is designed to further that interest.[43]

Here, the documents that SST withheld were exchanged between SST's attorneys and its employees' attorneys while SST and its employees were co-defendants in the trade secret litigation. At that time, SST and its employees shared a common interest in defending themselves against trade secret misappropriation claims. SST even signed joint defense agreements with both employees.[44] The communications also were designed to further an interest in securing legal

---

[39] *See id.* at 132-33.

[40] The mediation privilege granted here only extends as far as Judge Koh's order that settlement-related documents created after August 16, 2012 are not privileged. *See* Docket No. 38. To the extent SST believes Judge Koh's order is inconsistent with California law, SST must seek relief from Judge Koh.

[41] The joint defense privilege is also referred to as the common interest doctrine.

[42] *See OXY Res. California LLC v. Superior Court*, 9 Cal. Rptr. 3d 621, 633 (2004).

[43] *Id.* at 636-37.

[44] *See* Docket No. 93 at 17 n.2.

8
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

advice; they contain legal analysis related to the underlying trade secret litigation.[45]

***Fourth***, National Union is not entitled to *in camera* review of the documents SST withheld on the basis of mediation and joint defense privilege. In *United States v. Zolin*, the Supreme Court recognized excessive court inspection of privileged documents may discourage the very communications such privileges are designed to protect.[46] Accordingly, *in camera* review is only appropriate if the party moving for inspection presents evidence that supports a reasonable belief that *in camera* review may establish that the privilege does not apply.[47] Even after such a showing, the court retains discretion to determine whether *in camera* review is appropriate based on the "facts and circumstances of the particular case."[48] This, National Union has not done. National Union has not given the court any reason to believe that SST's privilege log or its privilege designations are improper. Nor has National Union put forth any evidence suggesting that the timing of mediation-related communications withheld under the joint defense privilege in any way implicates their privilege status.

***Fifth***, to the extent SST has not already complied with the requirements of Fed. R. Civ. P. 34(b), SST must provide an index of its produced documents that satisfies SST's obligations under the Federal Rules. Rule 34(b)(2)(E)(i) requires responding parties to produce

---

[45] *See* Docket No. 74-7. National Union also contends SST has not met its burden of proving that each withheld communication advanced a common interest. While a party asserting privilege has the burden of proving the privilege's applicability, that burden can be satisfied through creation of a privilege log. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992) ("We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach." (citations omitted)). SST's privilege log identifies the parties to each communication, each communication's creation date and broadly describes the contained legal analysis. *See* Docket No. 74-7. This level of detail is sufficient for SST to make a prima facie showing that privilege applies. *See In re Grand Jury Investigation*, 974 F.2d at 1071 (holding a privilege log identifying the nature of the document, all persons shown on the document to have received or sent the document, the document's creation date and information on each document's subject matter satisfies a party's burden to demonstrate privilege applicability).

[46] *See* 491 U.S. 554, 570-71.

[47] *See id.* at 574-75.

[48] *See id.* at 572.

9
Case No. 5:13-cv-05658-LHK
ORDER GRANTING-IN-PART MOTIONS TO COMPEL

documents "as they are kept in the usual course of business" or to "organize and label them to correspond to the categories in the request."[49] A party electing the former method "must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained."[50] "Providing information about how documents and ESI are kept under subsection (i) '[a]t a minimum . . . mean[s] that the disclosing party should provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents were obtained, an indication of whether they are retained in hard copy or digital format, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered.'"[51]

SST produced 14 volumes of documents.[52] Volumes 2-8 and 10-13 contain documents exchanged during the previous trade secret and patent litigation.[53] Volume 1 consists of discovery requests and responses, public pleadings and hearing transcripts from the underlying actions.[54] Those documents were produced here as they were produced in the prior litigation and National Union appears satisfied with these productions.[55] Only volumes 9 and 14 contain newly collected

---

[49] Rule 34(b)(2)(E)(i).

[50] *See Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008) (citing *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540-41 (D. Kan. 2006); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005)); *see also Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, Case No. 03-cv-05340, 2006 WL 5349265, at *3 (N.D. Cal. Feb. 8, 2006).

[51] *See Venture Corp. Ltd. v. Barrett*, Case No. 13-cv-03384, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) (citing *Pass & Seymour, Inc.*, 255 F.R.D. at 337).

[52] *See* Docket No. 68-5 at 2-4.

[53] *See id.* at 3.

[54] *See id.* at 2.

[55] In its meet and confer letter criticizing SST's production, National Union sought a corrected production according to Rule 34(b)(2)(E)(i) for documents "other than those marked in the underlying lawsuits." *See* Docket No. 682-2 at 40. In the same letter, National Union requested a different organizational guide for the documents exchanged in the earlier lawsuits, *see id.* at 40-41, that SST eventually provided. *See* Docket No. 68-5 at 2. National Union's brief focuses on deficiencies in the organizational information provided for volumes 9 and 14. *See* Docket No. 68 at 14.

documents related to this case.[56] SST originally produced the volumes with barely any identifying information.[57] It subsequently provided National Union with organizational information including a general description of each volume's contents, a custodial index and a list of search terms used to collect the documents.[58]

While SST's original production of unmarked volumes was inadequate, its subsequent production of organizational information brings SST largely into compliance with Rule 34(b)(2)(E)(i). To the extent it has not already done so, SST must fully comply with the requirements outlined above. This includes providing National Union with custodial information for each document, the time frames over which each custodian was searched and a general description of the filing systems from which the documents were taken. Alternatively, SST can organize and label each document to correspond to the categories in National Union's requests.[59]

### IV.

The motions are GRANTED-IN-PART. Any discovery ordered pursuant to this order shall be served within 14 days.

**SO ORDERED.**

Dated: July 15, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[56] *See* Docket No. 68-5 at 3-4.

[57] *See* Docket No. 68-2 at 26-27, 35.

[58] *See* Docket No. 68-5 at 2-5.

[59] To the extent National Union seeks any additional information, the request is DENIED. National Union also moves for an extension of the discovery deadline. This issue has been raised several times. *See* Docket Nos. 66, 82, 83, 88. Any request for further modification must be raised with Judge Koh.