1  DAVID B. GOODWIN (Bar No. 104469)
   Email: dgoodwin@cov.com
2  MICHAEL S. GREENBERG (Bar No. 99727)
   Email: mgreenberg@cov.com
3  ELIZABETH S. PEHRSON (Bar No. 197302)
   Email: epehrson@cov.com
4  TRACY O. ZINSOU (Bar No. 295458)
   Email: tzinsou@cov.com
5  COVINGTON & BURLING LLP
   One Front Street
6  San Francisco, California 94111-5356
7  Telephone: + 1 (415) 591-6000
   Facsimile: + 1 (415) 591-6091
8

9  JO DALE CAROTHERS (Bar No. 228703)
   Email: jcarothers@weintraub.com
10 ERIC CALIGIURI (Bar No. 260442)
   Email: ecaligiuri@weintraub.com
11 WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
12 LAW CORPORATION
   11682 El Camino Real, Suite 305
13 San Diego, California 92130
   Telephone: + 1 (858) 436-8152
14 Facsimile: + 1 (858) 436-3890

15
   Attorneys for Plaintiff
16 SILICON STORAGE TECHNOLOGY, INC.

17
18                    **UNITED STATES DISTRICT COURT**

19              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

20  SILICON STORAGE TECHNOLOGY, INC., | Civil Case No.: 5:13-cv-05658-LHK

21          Plaintiff, | **SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO THE INSURERS'**
22       v. | **MOTION *IN LIMINE* NO. 2 TO EXCLUDE ALL EVIDENCE AND ARGUMENT**
23  NATIONAL UNION FIRE INSURANCE | **REGARDING POTENTIAL DAMAGES IN**
    COMPANY OF PITTSBURGH, PA., and XL | **THE UNDERLYING TRADE SECRET**
24  SPECIALTY INSURANCE COMPANY, | **ACTION**

25          Defendants. | Date:     November 19, 2015
26                      | Time:     1:30 p.m.
                        | Courtroom: 8
27                      | Judge:    Hon. Lucy H. Koh
28

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO THE INSURERS' MOTION IN LIMINE NO. 2 TO EXCLUDE ALL EVIDENCE AND ARGUMENT REGARDING POTENTIAL DAMAGES IN THE UNDERLYING TRADE SECRET ACTION

Civil Case No.: 5:13-cv-05658-LHK

The Insurers make the erroneous assumption that a policyholder cannot obtain insurance coverage for a settlement without first hiring a forensic economist or accounting expert to prove how much the policyholder actually owed to the underlying plaintiff. Based on that erroneous assumption, they move to preclude SST's trade secret litigation expert, James Pooley, from opining to the reasonableness of the Trade Secret Action settlement because he used his own experience litigating scores of trade secret actions to opine that the underlying settlement here was reasonable. As we show, no legal authority supports the Insurers' proposed requirement that a policyholder retain an economist or accountant, not in California nor in any other jurisdiction. In fact—and quite tellingly—the Insurers' motion does not cite a single legal decision. The "requirement" is one of the Insurers' own creation.

Instead (and consistent with the settled principle that a settlement must be evaluated objectively, based on the information available to the parties *at the time of settlement*), courts permit policyholders to introduce evidence of reasonableness in many ways, including through the testimony of an experienced attorney viewing the litigation as it stood at settlement. That record may or may not include the work of a forensic economist or an accounting expert. That is because cases often settle well before expert discovery and defendants must frequently decide whether to accept a plaintiff's settlement demand by estimating their potential liability based on less precise data points, such as revenue information and the ranges of payments typical in similar cases, both of which Mr. Pooley considered. That does not make a defendant's decision to settle the underlying lawsuit prior to expert discovery unreasonable, and it does not make inadmissible the attorney expert's evaluation of potential damages and the reasonableness of a settlement in light of the potential liability. Not only did the Insurers fail to cite any cases, but SST also has been unable to locate any case precluding an expert from offering an opinion in an insurance case as to the reasonableness of a settlement because the expert's estimate of potential damages was not derived from a detailed forensic analysis. That is a classic issue of weight, not admissibility.

At bottom, the Insurers' motion is symptomatic of their broader misunderstanding of the "reasonableness" inquiry. Insurance coverage for a settlement does not depend on whether—with the benefit of 20/20 hindsight—the insured would have been found liable in the underlying action had that case not settled, or whether future discovery would have reduced the value of the plaintiff's claims.

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO THE INSURERS' MOTION IN LIMINE NO. 2 TO EXCLUDE ALL EVIDENCE AND ARGUMENT REGARDING POTENTIAL DAMAGES IN THE UNDERLYING TRADE SECRET ACTION

1

Civil Case No.: 5:13-cv-05658-LHK

1   Likewise, coverage does not depend on proving what the damages award would have been had the
2   underlying case gone through discovery and trial.  Insurance companies thus are not permitted to pick up
3   the underlying litigation where the settling parties left off and argue that the settlement is unreasonable
4   based on newly-developed information, not known to the parties—especially in this instance, where the
5   Insurers expressly waived any objection to SST proceeding to settle the Trade Secret Action before
6   expert discovery took place.  In other words, for purposes of this trial, it does not matter whether the
7   Xicor documents were *actually* trade secrets, whether Yeh and Levi were *actually* liable for
8   misappropriation, or whether their *actual* liability would have been in excess of $20 million.  The only
9   inquiry that matters is whether, based on the information available to the settling parties at the time, the
10  risk that the allegations against Yeh and Levi could turn out to be true, taken together with the
11  possibility of a huge damages award, made the decision to settle for $20 million reasonable.

12      Finally, the Insurers' motion raises the completely unrelated issue of whether the Court should
13  exclude certain exhibits as unauthenticated and hearsay.  As explained below, even if the Court were to
14  consider this off-topic issue, the Insurers' complaints are wholly groundless.

15  **I.    ARGUMENT**

16      **A.    There is No Basis to Exclude James Pooley's Estimate of SST's Liability**

17      The California Supreme Court has unambiguously stated that "proof of the reasonableness of the
18  settlement depends on the facts known at the time of settlement…." *Isaacson v. California Ins.*
19  *Guarantee Assn.*, 44 Cal. 3d 775, 794 (1988).  Accordingly, "[t]he insured need not prove his actual
20  liability on the underlying claim, and establishing a breach does not require a trial of the underlying
21  action." *Id*. at 793.  The same is true in the majority (and perhaps all) other jurisdictions. *See, e.g.,*
22  *United Services Automobile Assn. v. Morris*, 154 Ariz. 113, 121 (1987) ("[T]est as to whether the
23  settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position
24  would have settled for on the *merits* of the claimant's case.") (emphasis in original).

25      Thus, SST need not prove what would have been the underlying plaintiff's damages case or what
26  damages would have been awarded absent a settlement.  Rather, SST is entitled to do exactly what it
27  plans to do in this case, i.e., introduce the testimony of James Pooley, an attorney with over forty years

28

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO
THE INSURERS' MOTION IN LIMINE NO. 2 TO EXCLUDE  ALL
EVIDENCE AND ARGUMENT REGARDING POTENTIAL
DAMAGES IN THE UNDERLYING TRADE SECRET ACTION

2

Civil Case No.:  5:13-cv-05658-LHK

of relevant experience who has served as lead counsel in more than 100 trade secret disputes, to explain why the settlement amount was reasonable in light of the potential damages and risks of liability. Mr. Pooley will walk the jury through the relevant facts of the underlying Trade Secret Action as they existed at the time of settlement, and explain how those facts support his objective assessment that the plaintiff was highly likely to be able to establish misappropriation. Mr. Pooley will then discuss how a reasonable defendant, using the information at hand at the time, would estimate its potential liability, which, in this instance, includes: (1) the propensities of local jurors, (2) consideration of the billions of dollars of relevant revenue earned by SST during the 20-plus years of alleged misappropriation, (3) the results in recent trade secret litigation, and (4) the purchase price that Microchip paid for SST. After considering all of this information and reflecting on his decades of experience handling cases just like this one, Mr. Pooley will testify that the $20 million settlement agreed upon was reasonable, and actually towards the low end of the range of exposure that extended well into the nine figures.

The Insurers' position that Mr. Pooley could or should have based his estimate of potential liability on a more precise measure not available at the time of settlement is contrary to governing California law. But even absent this law, the Insurers' critique would go, at most, to the weight, not the admissibility, of Mr. Pooley's testimony. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("The relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility.") (citations omitted); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 1737951, at *7 (N.D. Cal. Apr. 8, 2015) ("Questions regarding which facts are most relevant or reliable for calculating a reasonable royalty go the weight of expert opinion, not its admissibility, and are properly left to the jury.").

As noted above, the Insurers have not cited, and SST has not found, any decision precluding an expert attorney from opining on the reasonableness of a settlement because the attorney's estimate of potential liability was not based on the work of a forensic economist or accountant. On the contrary, courts have permitted attorneys retained as experts to opine on a settlement's reasonableness without that information. *See Teleflex Med. Inc. v. Nat'l Union Fire Nat. Union Fire Pittsburgh, PA*, No. 11-cv-1282-WQH-DHB, 2014 WL 3671309, at *8-9 (S.D. Cal. July 22, 2014) (finding testimony of attorney

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO THE INSURERS' MOTION IN LIMINE NO. 2 TO EXCLUDE ALL EVIDENCE AND ARGUMENT REGARDING POTENTIAL DAMAGES IN THE UNDERLYING TRADE SECRET ACTION

3

Civil Case No.: 5:13-cv-05658-LHK

retained as expert witness to opine on the reasonableness of a settlement agreement "sufficiently reliable based on [his] knowledge and experience" even where attorney did not address the merits or quality of the competing expert reports in the underlying action); *Gopher Oil Co. v. Am. Hardware Mut. Ins. Co.*, 588 N.W.2d 756, 769 (Minn. Ct. App. 1999) (finding settlement reasonable based on the testimony of an attorney who testified to his estimate of the defendants' potential exposure, the evidence suggesting liability, and future defense and trial costs).

In short, the Insurers' motion asks the Court break with precedent and establish a new requirement for experts opining on a settlement's reasonableness that (as far as SST can tell) has never been applied in any court in any jurisdiction. The Court should decline that invitation.

### B.    There is No Basis For Excluding SST's Exhibits

In a few sentences without any legal authority, the Insurers ask the Court to exclude, as lacking foundation and hearsay, six exhibits (Bjornholt Dep. Exs. 81 and 85-89) about which the Insurers questioned Eric Bjornholt, Microchip and SST's Chief Financial Officer. In so doing, they put the cart before the horse; there is no basis to exclude these exhibits before trial even begins.

First, contrary to the Insurers' characterization, Mr. Bjornholt did authenticate Bjornholt Exhibit 81 during his deposition, explaining where the document came from, what it represented, and how the document was prepared. *See, e.g.,* Dkt. No. 196-8 at 24:22-24; 26:4-16; 171:6-23; 174:2-175:20. In addition, Steve Sanghi, CEO of SST and Microchip, provided detailed testimony on the substance of Exhibit 81. *See* Pehrson Decl., Ex. E at 108:23-115:2. This is sufficient evidence of admissibility. *Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1302 (9th Cir. 1978).

Second, Bjornholt Exhibits 85 through 89 are, according to a representation of the Insurers' own counsel, documents and cover letters produced in the underlying trade secret and patent actions. *See* Dkt. No. 196-8 at 100:5-12; 102:13-25; 104:2-4. That Mr. Bjornholt was not personally familiar with these documents when the Insurers showed them to him at his deposition is irrelevant. That one of SST's witnesses could not authenticate these documents on the fly in his deposition is not a ground to prevent other SST witnesses from authenticating and establishing their admissibility at trial.

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO THE INSURERS' MOTION IN LIMINE NO. 2 TO EXCLUDE ALL EVIDENCE AND ARGUMENT REGARDING POTENTIAL DAMAGES IN THE UNDERLYING TRADE SECRET ACTION

4

Civil Case No.: 5:13-cv-05658-LHK

Dated:  November 9, 2015

COVINGTON & BURLING LLP

By:  /s/ David B. Goodwin

David B. Goodwin
Attorneys for Plaintiff
SILICON STORAGE TECHNOLOGY, INC.

SILICON STORAGE TECHNOLOGY, INC.'S OPPOSITION TO THE INSURERS' MOTION IN LIMINE NO. 2 TO EXCLUDE ALL EVIDENCE AND ARGUMENT REGARDING POTENTIAL DAMAGES IN THE UNDERLYING TRADE SECRET ACTION

5

Civil Case No.:  5:13-cv-05658-LHK